PUBLIC HOUSING ADMINISTRATION an Agency of the United States of America

v.

BRISTOL TOWNSHIP, BUCKS COUNTY, PENNSYLVANIA, and Edward A. Wiler, Eugene Kehoe, James Dunleavy, John Gallagher, Fred K. Hibbs, Elbert J. Kohle, Rudolph Krause, Harold Lefcourt, Wayne W. Locke, Laurence Mervine, Albert H. Rogers, Jr., Thomas Comen, Township Commissioners of Bristol Township, Bucks County, Pennsylvania, and Earl Dougherty, Justice of the Peace, Edgely, Bristol Township, Bucks County, Pa.

No. 21307.

United States District Court E. D. Pennsylvania.

Dec. 3, 1956.

Supplemental Opinion Jan. 3, 1957.

Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Gilbert J. Kraus, Furlong, Pa., Thomas A. Reap, Jr., Doylestown, Pa., Alfred F. Shea, Cornwells Heights, for defendants.

VAN DUSEN, District Judge.

This case comes before the court on plaintiff's motion for a preliminary injunction and on defendants' motion for entry of judgment in their favor made at the conclusion of the hearing held on the motion for preliminary injunction.[1] The hearing judge's conclusion that the defendants are entitled to the entry of judgment in their favor, on the basis of the entire record, makes it unnecessary to consider the motion[2] for dismissal of the action made by defendants at the conclusion of plaintiff's case.

Plaintiff (a corporation and agency of the United States of America) seeks to enjoin Bristol Township (located in Bucks County, Pa.), the twelve Commissioners of that Township, and a Justice of the Peace of that Township from enforcing a stop work order issued by the Building Officer of the Township for failure of an electrical contractor to secure building permits[3] prior to doing

1. All counsel agreed that the hearing judge should dispose of the action on the basis of the evidence presented at these hearings (October 30 and November 23) on the preliminary injunction. On October 30, plaintiff amended the complaint to substitute the words "war time housing" for the words "low rent housing." Although the defendants' answer denies most of the allegations of the complaint, which contains many conclusions of law, there were virtually no conflicts in the evidence. By order of November 29, 1956, the motion for a preliminary injunction was denied.

2. The hearing judge reserved his ruling on this motion at the time it was made (October 30, 1956).

3. Section 309 of the Bristol Township Building Code provides that no building shall be repaired or altered until a building permit has been obtained. Section 1106 of that Code states that a permit is required for electric wiring. Section 309a states that the building permit number must be displayed on the building in such a manner that it may be seen from the street on which the building fronts.

some electrical work under a contract with plaintiff on a public housing project owned and operated by plaintiff and known as Bristol Terrace I. The General Housing Manager of this project testified without contradiction that the sole purpose of the electrical repairs was to enable the plaintiff to sell the electrical system in the 199 units and in the administration building to the Philadelphia Electric Company, which sale is being made in order to facilitate the sale of these 199 units to private owners.[4] A private electric plant operated by plaintiff is now supplying electric current to the tenants of the project [5] but plaintiff's plan to sell the units [6] requires that current be available from a public utility and that meters be installed.[7] The contract under which this electric work was done provides (see paragraphs 1(a) and 4 of Detailed Specifications—Exhibit P-7):

"(a). The work in general consists of increasing the electrical service capacity, providing metering facilities and correct wiring defects to meet the requirements of the Philadelphia Electric Company and all local and national codes and regulations.

\* \* \* \* \*

"4. *Installation Requirements*

"Install raceways, cables, wires, supports, switches, meter sockets, etc. as required and indicated on drawings, supplying such auxillary equipment and materials necessary to complete the installation to meet the requirements of the Philadelphia Electric Company and Local and National Codes."

The first sentence of paragraph 11 of the General Provisions of the Contract (see Exhibits P-7 and P-3) provides:

"The Contractor shall, without additional expense to the Government, obtain all licenses and permits required for the prosecution of the work."

Bristol Terrace I is a permanent housing project, was completed in 1942 or 1943 under the Lanham Act of October 14, 1940,[8] 54 Stat. 1125, 42 U.S.C.A. §

---

4. Paragraph 1b, the last sentence of 1k, and 2d of the Contract for the electrical work provides (see Detailed Specifications—Exhibit P-7):
"(b). The Philadelphia Electric Company will replace all service drops and connect to the new service entrance cable to be installed under this contract.
\* \* \* \* \*
"(k) \* \* \* Existing meter fitting to remain shall be conditioned for use of the Philadelphia Electric Company to install their bottom connected meters and shall meet their requirements.
\* \* \* \* \*
"(d) The Contractor shall cooperate with the Philadelphia Electric Company and the complete installation shall meet their requirements."

5. All the 199 units are now occupied.

6. The present plan is to sell the units individually, rather than as a whole, to a single purchaser, such as a mutual organization—see paragraph 4a of Exhibit P-11 and paragraph 2 of Exhibit P-10.

7. Paragraph 1c of the above-mentioned Contract's Detailed Specifications (Exhibit P-7) provides:

"(e) Each dwelling unit and Administration Building shall have an individual service, including metering facilities."

8. The Acts of Congress amending the Lanham Act are listed in the "Popular Name Table" appearing in the last index volume of the United States Code Annotated, pages 740 & 741 of the bound volume and page 106 of the 1955 Cumulative Annual Pocket Part for use during 1956. These amendatory Acts make clear that 42 U.S.C.A. § 1521, which is primarily relied upon by the plaintiff, expired on July 1, 1953. See Section 1(a) (12) of Public Law 450 of 82nd Congress, 2nd Sess., Act July 3, 1952, 66 Stat. 330, at page 332, 42 U.S.C.A. § 1521 note, which provided that "for the purpose of continuing the use of property held under said Act of October 14, 1940 [(54 Stat. 1125), as amended, \* \* \* (42 U.S.C.A. §§ 1521, 1532, 1541, 1561, 1562, 1571) ] \* \* \* the emergency declared by the President \* \* \* shall \* \* \* continue to exist \* \* \*" until six months after the termination of the national emergency proclaimed by the President on December 16, 1950, No. 2914, 50 U.S.C.A.Ap-

1521 ff. as a war housing project [9] and is situated on approximately 35 acres of land in Bristol Township. It was being operated by the plaintiff in 1956 when the decision was made to take active steps to dispose of this property.[10] After competitive bids were received for the electric work described above, a contract dated June 25, 1956, was entered into with John Harold Bronson, trading as The Bronson Electric Company.[11] Bronson started work in July and on August 3, 1956, his foreman was instructed by the Bristol Township Building Official to terminate the electric work in accordance with a stop work order issued under Section 305 of the Bristol Township Building Code (Exhibit D-4A), which was posted at the job site and a copy of which was sent by registered mail to, and received by, Bronson. The next week the above-mentioned Building Official explained to Bronson

on the phone that building permits for each of the 200 buildings to which repairs were to be made could be secured for $1.15 per building, or a total of $230. Bronson failed to apply for such permits and, on August 10, 1956, the Building Official had the Justice of the Peace issue 67 warrants charging Bronson with violation of Sections 309 and 309a of the Building Code [12] (see Exhibits D-5 [13] and D-6) in connection with 67 units on which he had been working. On August 16 Bronson appeared for a hearing and entered a plea of guilty. The Justice of the Peace imposed a fine and costs (under Section 1301 of the Code) in the total amount of $2445.50. Bronson has filed no appeal (Cf. 19 P.S. § 1189).

The hearing judge adopts the foregoing as Findings of Fact.

On September 7, 1956, this suit was started and a temporary restraining order was entered by the motion judge on

pendix note preceding section 1, "but in no event beyond April 1, 1953," and Public Law 12 of 83rd Congress, 1st Sess., Act March 31, 1953, 67 Stat. 18, 42 U.S.C.A. § 1521 note, substituting the date "July 1, 1953" for the date "April 1, 1953" wherever the latter date was used in the above-mentioned Public Law 450, 66 Stat. 330. In view of this action taken by the 82nd and 83rd Congress, it is clear that no repairs made to this project in the year 1956 could have been made pursuant to 42 U.S.C.A. § 1521. For this reason alone, cases such as United States v. City of Chester, 3 Cir., 1944, 144 F.2d 415, and United States v. City of Philadelphia, D.C.E.D. Pa.1944, 56 F.Supp. 862, affirmed 3 Cir., 1945, 147 F.2d 291, relied on by plaintiff, which dealt with far different factual situations, are inapplicable to this case.

9. Although counsel for plaintiff has made constant reference to 42 U.S.C.A. § 1401 ff. (The United States Housing Act of 1937, as amended) in his Memorandum of Law and Argument, the evidence indicates (although none of the attorneys appeared to have definite knowledge on the subject) that this project was created under the Lanham Act, 42 U.S.C.A. §§ 1521 to 1590. The General Housing Manager stated it was built as a war housing project for war workers in the area. Also, it is referred to as a perma-

nent project in Exhibit P-10 and reference is made to permanent projects in 42 U.S.C.A. § 1524 and not in the 1937 Act, 42 U.S.C.A. § 1401 ff.

10. Exhibit P-10 indicates that disposition of this project was contemplated as early as March 1951.

11. See Exhibits P-1, P-2, P-5 and P-7. The contract provided for a consideration of $17,140, a completion date of 10/2/56, that the work should conform to local codes and requirements, and that Bronson should bear the responsibility and cost of "permits." See above, pages 2-5 and footnotes 3, 4, & 7.

12. See footnote 3 above for a summary of these sections. It would seem that Bronson had actually violated Section 1301 of the Code, which provides that any contractor who repairs or causes to be done any work in the repair of any building without a permit first having been obtained shall be liable to a fine of $50.00 or imprisonment for 5 days for each offense (see 53 P.S. 19092–3301, authorizing § 1301 of the Code).

13. The Justice of the Peace testified that Exhibit D-5 was the summary of the docket entry under the warrant where he had noted what took place at the hearing, but 66 other warrants had been recorded on his books prior to August 16, 1956.

that day, restraining all the defendants from enforcing the stop work order entered under the Building Code and the judgment entered by the Justice of the Peace. This temporary restraining order was terminated by order of the hearing judge dated November 29, 1956.

▮ The basic legal issue in this case is: may a contractor doing work for the Federal Government disregard building code legislation enacted by a local community under the police power, where the work to be done under the contract is solely for the purpose of facilitating the sale by the Federal Government of its property to private citizens? [14]

The United States Supreme Court has held that, unless Congress provides to the contrary, a contractor who erects a Government post office "does not share any governmental immunity" and is subject to "provisions as to types of material, fire hazards and the like, which are covered by the New York City Building Code." See James Stewart & Co. v. Sadrakula, 1940, 309 U.S. 94, 105, 60 S.Ct. 431, 436, 84 L.Ed. 596. It has been repeatedly held that a state may impose a nondiscriminatory tax on the activities of a contractor for the Federal Government.[15] Also, the United States Supreme Court has made clear that even employees of federal corporations acting as agencies of the United States (such as plaintiff) are not immune from reasonable state legislation. See Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927. However, the Government contends that the Lanham Act is inconsistent with the above-mentioned sections of the Bristol Township Building Code.

In applying the supremacy clause of the United States Constitution, Article VI, clause 2, the task of a court is to determine whether the state or local police power regulation (in this case, the requirement of the Bristol Township Building Code that permits be secured prior to the making of electrical repairs)[16] is compatible with the policy expressed in the federal statutes and in the Federal Constitution. An examination of the Lanham Act, as amended, 42 U.S.C.A. §§ 1521–1590, indicates to the hearing judge that Congress expressed no intent to exempt a contractor doing electrical work, in order to enable the sale of such housing units to private citizens, from

14. The existing wiring is adequate for the operation of this project on a rental basis by the Public Housing Administration and the rewiring and installation of meters is being done solely to enable the sale of the electrical system in the project to the Philadelphia Electric Company, which sale, in turn, will make possible the sale of the units themselves to private citizens. See pages 2–3 above and footnote 3.

15. E. g. James v. Dravo Contracting Co., 1937, 302 U.S. 134, 58 S.Ct. 208, 82 L. Ed. 155—Occupation tax measured by gross receipts under contracts with U. S.A.; Trinityfarm Const. Co. v. Grosjean, 1934, 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918—excise tax on gasoline used to operate machinery in construction of navigable river levees; Atkinson v. State Tax Commission, 1938, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621—net income tax on government contractor; State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3—

sales and use taxes on purchases of materials used by a contractor in the performance of a cost-plus contract with the United States; Wilson v. Cook, 1946, 327 U.S. 474, 66 S.Ct. 663, 90 L. Ed. 793—a severance tax on timber severed and purchased from lands owned by the United States.

16. It is clear that local ordinances designed to promote public safety through diminishing fire hazards are proper exercises of the police power. See Pierce Oil Corp. v. City of Hope, 1919, 248 U.S. 498, 39 S.Ct. 172, 63 L.Ed. 381; Standard Oil Co. v. City of Marysville, 1929, 279 U.S. 582, 49 S.Ct. 430, 73 L. Ed. 856; Queenside Hills Realty Co. v. Saxl, 1946, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096. In the Saxl case, the court upheld a new law requiring the installation of automatic sprinklers in an existing lodging house of non-fireproof construction where compliance required an expenditure of $7,500.00 on a property worth $25,000.00.

a local building code requirement designed to protect the public safety.[17] In fact, Congress expressed its intent that projects constructed under this Act "shall, so far as may be practicable, conform in location and design to local planning and tradition," 42 U.S.C.A. § 1545 and that Government ownership of the project shall not "deprive any State or political subdivision thereof, including any Territory or possession of the United States, of its civil and criminal jurisdiction in and over such property, or impair the civil rights under the State or local law of the inhabitants on such property." 42 U.S.C.A. § 1547.[18] The Act recognizes that local governments will furnish services to projects such as Bristol Terrace I for which Congress provided compensation should be made.[19]

The United States Supreme Court has consistently held that Congress, in enacting legislation within its constitutional authority, will not be deemed to have intended to invalidate state or local rules for protection of the public safety unless its purpose to do so is clearly stated. Southern Pacific Co. v. State of Arizona, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; Rice v. Santa Fe Elevator Co., 1947, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447; International Union, U. A. W. A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 253, 69 S.Ct. 516, 93 L.Ed. 651; United States v. Burnison, 1950, 339 U.S. 87, 91–92, 70 S.Ct. 503, 94 L.Ed. 675.

The United States Supreme Court has construed the language of Article IV, Section 3, of the Constitution[20] as requiring that the method of disposing of Government property "must be consistent with the foundation principles of our dual system of government and must not be contrived to govern the concerns reserved to the States." Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 338, 56 S.Ct. 466, 479, 80 L.Ed. 688.

The United States Supreme Court has repeatedly stated that the extension of federal control into traditional local fields is a " ' "delicate exercise of legislative policy in achieving a wise accommodation between the needs of central control and the lively maintenance of local institutions." ' " See Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 154, 64 S.Ct. 474, 480, 88 L.Ed. 635, and

17. Ever since Fletcher v. Peck, 1810, 6 Cranch 87, 10 U.S. 87, 128, 3 L.Ed. 162, state and local police power regulations have been presumed to be valid if there is any state of facts which could justify them. See, also, Powell v. Commonwealth of Pennsylvania R. Co., 1888, 127 U.S. 678, 8 S.Ct. 992, 1257, 32 L.Ed. 253; cf. Atlantic Coast Line v. City of Goldsboro, 1914, 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721, and cases there cited.

18. Cf. Section 305(a) of the Act of September 1, 1951, 42 U.S.C.A. § 1592d, 65 Stat. 305, which contains this language:
"* * * to the maximum extent practicable, taking into consideration the availability of materials and the requirements of national defense, any housing or community facilities, * * * constructed by the United States pursuant to the authority contained herein shall conform to the requirements of State or local laws, ordinances, rules, or regulations relating to building codes."

In view of the fact that Section 603 of that Act, 65 Stat. 314, 42 U.S.C.A. § 1584, amends certain sections of the Lanham Act and that Section 617 of that Act, 65 Stat. 317, 42 U.S.C.A. § 1591 note, provides that its provisions "shall be controlling" if inconsistent with "the provisions of any other law," Congress may have intended this language to apply to projects constructed under the Lanham Act.

19. Also, the Public Housing Administrator "shall pay from rentals annual sums in lieu of taxes to any State and/or political subdivisions * * *" and such sums shall approximate the taxes "with such allowance as may be considered by him to be appropriate for expenditure by the Government for streets, utilities, or other public services to serve such property." 42 U.S.C.A. § 1546.

20. "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting * * * Property belonging to the United States."

cases there cited. The difficulty of determining whether Congress has intended to supersede the local police power in situations such as this is illustrated by many decisions of the United States Supreme Court.[21] However, the hearing judge believes that Congress did not intend, either by its specific enactments or by its silence, to interfere with the attempts of Bristol Township to require Mr. Bronson to secure building permits in this situation so as to safeguard the safety of its citizens from possibly hazardous electric repair work. The provisions of the contract make clear that the Public Housing Administration expected Bronson to comply with local codes and that the burden was placed upon him to secure permits. Under these circumstances, the plaintiff has not sustained the burden of proving that it is entitled to an injunction and judgment will be entered in favor of the defendants.

The hearing judge makes the following conclusions of law:

1. Congress has not manifested its intent to relieve John H. Bronson of securing the building permits mentioned above in performing the electrical repairs called for by the contract of June 25, 1956.

2. Sections 309, 309a and 1106 of the Bristol Township Building Code are valid exercises of the police power.

3. A federal court should not use its equitable power to enjoin the Justice of the Peace, Earl Dougherty, in carrying out the criminal law of Bristol Township, as contained in Section 1301 of the Bristol Township Building Code.[22]

4. Under all the circumstances, defendants are entitled to the entry of judgment in their favor.

### Supplemental Opinion in United States of America v. Bristol Township, et al.

This case is now before the court on plaintiff's motion filed December 12, 1956, (a) to open the judgment entered December 3, 1956, after both parties had been granted unlimited opportunity to present testimony at two hearings held for the purpose, (b) to stay proceedings, and (c) for a new trial or a rehearing.

In order to give plaintiff every opportunity to present its viewpoint, the hearing judge gave plaintiff another opportunity to present evidence on December 21, 1956.[1] This evidence[2] disclosed that the practice of the Bristol Township Building Official was to waive the filing of detailed plans as part of the application for a Building Permit contemplated by Sections 309 and 1106 of the Bristol Township Code, unless the application as submitted disclosed the need for such plans. It also showed that inspection cards had been received from the Middle Department Association of Fire Underwriters[3] approving the work already done by The Bronson Electric Company under the contract dated June 25, 1956.[4]

---

21. For example, compare Penn Dairies, Inc., v. Milk Control Commission of Pennsylvania, 1943, 318 U.S. 261, 63 S. Ct. 617, 87 L.Ed. 748, with Pacific Coast Dairy, Inc., v. Department of Agriculture, etc., 1943, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761, both of which decisions were handed down the same day. Cf. United States v. Constantine, 1935, 296 U.S. 287, 295, 296, 56 S.Ct. 223, 80 L.Ed. 233.

22. See Stefanelli v. Minard, 3 Cir., 1950, 184 F.2d 575, affirmed 1951, 342 U.S. 117, 120–122, 72 S.Ct. 118, 96 L.Ed. 138. This conclusion does not preclude Mr. Bronson's right to present to the appropriate state courts (with eventual application for review by the United States Supreme Court) any claims that he may have based on federal grounds.

1. By agreement of all counsel, the name of the plaintiff in the caption was changed at this hearing to "United States of America" from "Public Housing Administration, an Agency of the United States of America."

2. Plaintiff offered the testimony of the Building Official of Bristol Township.

3. This Association is the electric wiring inspection agency of the Township pursuant to Section 1108 of the Code.

4. The testimony did not disclose how much or how little of the work under the contract dated 6/25/56 had been completed and approved by the Middle De-

866

The record also makes clear that all the work contemplated by the contract dated June 25, 1956, has not been completed and cannot be completed until the Philadelphia Electric Company does some additional work which is expected to be performed early this year. For this reason, all the work contemplated by the contract of June 25, 1956, could not have been inspected on the last hearing dated (12/21/56).

The foregoing are adopted as findings of fact supplemental to those contained in the opinion of December 3, 1956.

 In connection with the issues attempted to be framed by plaintiff's counsel in paragraph 3 of the above-mentioned motion filed December 12, 1956,[5] Conclusions of Law 1 and 2 (see page 865) of Opinion of December 3, 1956, makes clear that the sections of the Bristol Township Building Code referred to in Conclusion of Law 2 are applicable to Mr. Bronson. It is not the function of a court to give an advisory opinion to plaintiff on the "purposes" of these sections or exactly what data should be contained in the applications for building permits.[6] Plaintiff has not sustained its burden of proving that the securing of these building permits would interfere with, or obstruct, in a substantial way the performance of federal functions. The cases relied on by plaintiff in

its able brief involve substantially different factual situations. The Ashwander case has laid down the rule to be followed in disposing of federal property, which is the situation before this court, and that case establishes a rule far different from those followed in the cases cited by plaintiff.[7]

The first sentence on page 7 of the opinion of December 3, 1956, [146 F. Supp. 863] is inaccurate [8] as worded and is amended to read as follows:

"The United States Supreme Court has stated that, unless Congress provides to the contrary, a contractor who erects a Government post office 'does not share any governmental immunity' and 'such a safety regulation as § 241(4) of the New York Labor Law [McK.Consol. Laws, c. 31] provides is effective in the federal area, until such time as the Congress may otherwise provide.' See Stewart & Co. v. Sadrakula, 1940, 309 U.S. 94, 105 [60 S. Ct. 431, 84 L.Ed. 596]."

The cases cited in footnote 16, of the December 3 opinion [146 F.Supp. 863] make clear that local ordinances of the type involved here, which are designed to promote public safety through the elimination of fire hazards, are not in violation of the United States Constitution.

partment and the plaintiff has the burden of proof in this case.

5. The Bristol Township Building Code has been received in evidence (Exhibits D–4 and D–4A) and, if plaintiff is correct that the notes of testimony, which have not been transcribed, will disclose that only part of it has been offered in evidence, the hearing judge takes judicial notice of the contents of Exhibits D–4 and D–4A as constituting the terms of the Bristol Township Building Code in the summer and fall of 1956.

6. Plaintiff has produced no testimony showing the requirements of the Building official are unreasonable. See, for example, testimony summarized at pages 1 and 2 above. As pointed out in the opinion of December 3, 1956, the Bristol Township officials have made no attempt to interfere with the operation of the existing electrical system used, and to be

used, in this project as long as it remains a government rental project, but are only concerned with approval of the wiring to be used by the civilian purchasers of this project from the federal government. The filing of applications for building permits will enable, among other things, the building official to make sure that the wiring in each of the 200 separate units which are to be rewired is inspected and approved in accordance with Sections 1105–1108 of the Bristol Township Building Code, thereby decreasing the chances of fire and other hazards to life and property incident to the use of electricity.

7. See page 10 of opinion of December 3, 1956 [146 F.Supp. 864].

8. There is no clause in Bronson's contract comparable to the one referred to, 309 U.S. at page 105, 60 S.Ct. at page 436, of the Sadrakula case.

Order.

And Now, January 3, 1957, It Is Ordered that plaintiff's motion filed December 12, 1956, to open judgment, to stay proceedings and for a new trial is Denied.