765 F.2d 16
 UNITED STATES of America, Appellee,
v.
TOWN OF WINDSOR, CONNECTICUT; and Jerry J. Columbus,
Building Inspector and Zoning Enforcement Officer of the
Town of Windsor and his successors in office, Defendants and
Third-Party Plaintiffs-Appellants.
General Electric Company, and Custom Concept Builders of
Connecticut, Inc., Third-Party Defendants.
 No. 1045, Docket 85-6015.
 United States Court of Appeals,
Second Circuit.
 Argued April 17, 1985.
Decided June 14, 1985.
 
 Vincent W. Oswecki, Jr., Windsor, Conn. (O'Malley, Deneen, Messina & Oswecki, Windsor, Conn., of counsel), for defendants and third-party plaintiffs-appellants.
 John J. McCarthy, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., W. Philip Jones, Asst. U.S. Atty., D. Conn., Hartford, Conn., of counsel), for appellee.
 Before OAKES, MESKILL and PIERCE, Circuit Judges.
 MESKILL, Circuit Judge.
 
 
 1
 Appellants the Town of Windsor, Connecticut and Jerry J. Columbus, the Town's Building Inspector, appeal from a final judgment of the United States District Court for the District of Connecticut, Clarie J., permanently enjoining them from enforcing the permit provisions of the Connecticut Basic Building Code against the United States or its contractors the General Electric Company and Custom Concept Builders of Connecticut, Inc. Appellants had sought to enforce the permit provisions of the Building Code with respect to construction the United States had undertaken in the Town of Windsor. The district court granted the United States' motion for preliminary and permanent injunctive relief, concluding that enforcement of the permit provisions would violate the Supremacy Clause of the United States Constitution. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 2
 The United States (Government) owns land in the Town of Windsor, Connecticut (Town). On this land the Government built a complex that is part of the Knolls Atomic Power Laboratory. The Knolls Atomic Power Laboratory is in turn part of the Department of Energy's (DOE) Naval Nuclear Propulsion Program. Pursuant to a contract with DOE, the laboratory is managed by the General Electric Company (GE). The work performed at the Windsor site involves the research and development of shipboard nuclear reactors and the training of naval personnel. The site and work are classified under DOE and Department of the Navy security regulations.
 
 
 3
 The Government eventually decided to expand the Windsor facility. Included in the expansion is the construction of two new buildings with interconnecting underground tunnels. One of the buildings is within the area currently designated as classified and the other is outside of that area. However, before the completion of construction the classified area will be expanded to cover both buildings. The construction, the exact nature and purpose of which is classified, was undertaken pursuant to DOE's general construction authority, 42 U.S.C. Sec. 2201(e) (1982), and has been funded by the Department of Energy National Security and Military Applications of Nuclear Energy Authorization Act of 1981, Pub.L. No. 96-540, 94 Stat. 3197 (1980).
 
 
 4
 Pursuant to its contractual obligation and at the direction of the Director of the Naval Nuclear Propulsion Program, GE assumed the function of general contractor for the construction and issued an Invitation to Bid. On February 22, 1983, the construction subcontract was awarded to Custom Concept Builders of Connecticut, Inc. (Custom). Construction began on May 4, 1983.
 
 
 5
 Thereafter, the Town sent out correspondence to Custom, GE and DOE insisting that under the Connecticut Basic Building Code (Code), Custom was required to obtain a building permit for the construction. On June 22, 1984, the Town building inspector issued to Custom and GE an order to stop work on the Windsor construction. The order advised Custom and GE that under Connecticut law they were required to secure a building permit and that continued work without a permit would result in the imposition of a fine of up to $500 per day. Work on the project continued.
 
 
 6
 On July 11, 1984, the Town filed a complaint seeking temporary and permanent injunctions in the Connecticut Superior Court for the Judicial District of Hartford/New Britain. It also obtained an order to show cause returnable on July 30, 1984 directing Custom and GE to appear at a hearing on the Town's motion for a temporary restraining order to enforce the stop work order.
 
 
 7
 On July 17, 1984, the Government commenced the instant action against the Town and its building inspector. It sought both a stay of the state court proceeding and an injunction against enforcement of the Code's permit provisions with respect to the Windsor construction. The district court stayed the state court proceedings on July 26, 1984. The Town then answered the complaint and filed a third-party complaint against GE and Custom, seeking an injunction against further construction without a permit.
 
 
 8
 After a one day trial, the district court granted the Government a permanent injunction against enforcement of the Code's permit requirement. In so doing, the court rejected the Town's argument that although it may not demand compliance with the Code from the Government, it may demand compliance from the Government's contractors. Recognizing that the Government owned all of the land and buildings at the Windsor site and was financing 100 percent of the construction, the court reasoned that enforcing the permit requirements against the contractors would in effect allow the Town to regulate the activities of the Government. It found that such a result would interfere with a national purpose, specifically, the development of nuclear propulsion and the training of naval personnel.
 
 DISCUSSION
 
 9
 The only aspect of the Code at issue in this case is the permit requirement. Under the Code, an owner, a lessee or an owner's authorized representative must obtain a building permit from the building inspector of the town in which construction will take place. If the application is made by someone other than the owner, it must be accompanied by an affidavit from the owner or his agent stating that the proposed work is authorized by the owner. Code, Sec. 112.3. The application also must be accompanied by at least two copies of the project's specifications and plans. Code, Sec. 112.5. The building inspector must approve the plans, Code, Secs. 109, 113.1; he must inspect the site before, during and after construction, Code, Sec. 110; and he has a right of entry onto the construction site for purposes of conducting inspections, Code, Sec. 111. In addition, a fee must be paid before a permit will be issued. Code, Secs. 114.1, 117. The fee is designed to defray the costs of enforcing the Code, particularly inspection costs. United States v. Town of Windsor, 496 F.Supp. 581, 586 (D.Conn.1980); Welch v. Hotchkiss, 39 Conn. 140, 142 (1872).
 
 
 10
 The Town does not argue that it may enforce the permit requirement directly against the Government. Absent congressional consent, direct state regulation of the activities of the Government is barred by the Supremacy Clause. As the Supreme Court has stated: "Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is 'a clear congressional mandate,' 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.' " Hancock v. Train, 426 U.S. 167, 179, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976) (footnotes omitted). The Town points to no such authorization here.[1] It argues, however, that because the Windsor site is not a federal enclave, private contractors that are not alter egos of the Government are subject to state regulation.
 
 
 11
 The Government concedes that the Windsor area is not a federal enclave and that GE and Custom are not alter egos of the Government.[2] In such a situation, application of the Supremacy Clause requires a balancing of the state and local interest in enforcing their regulations against the Government's interest in opposing the regulation. See, e.g., Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) (per curiam); DeKalb County v. Henry C. Beck Co., 382 F.2d 992, 996 (5th Cir.1967); Public Housing Administration v. Bristol Township, 146 F.Supp. 859, 863-64 (E.D.Pa.1957).
 
 
 12
 The Government's interest in preventing application of the permit requirement against its contractors is clear. Enforcement of the substance of the permit requirement against the contractors would have the same effect as direct enforcement against the Government. Either way, it would result in the Government's turning over its classified plans and specifications to the Town's building inspector and in the Government's opening its classified building site for inspections.
 
 
 13
 Given these facts, the Town's reliance on James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940), is inappropriate. According to the Town, Sadrakula stands for the proposition that state building regulations may be enforced against government contractors. However, even if we were to accept the Town's reading of Sadrakula, the instant case would be distinguishable. There the application of the particular "state" regulation merely required the Government's contractor to comply with certain work safety rules and the impact of the "local" regulation on the Government's interest was at best incidental.[3] Here, on the other hand, the impact of the local regulation would fall directly on the Government and result in classified information being disclosed and a classified area being opened to Town officials.
 
 
 14
 Against this strong Government interest, the Town's relatively weak interest must give way. Other than a desire to learn what goes on at the Windsor site, the Town's interest in receiving copies of the plans and specifications, approving the plans and inspecting the construction site is unclear. These buildings are not like a V.A. hospital or public housing project which members of the public would be expected to use. If they were, the Town's interest in protecting the public by enforcing public safety rules would at least be understandable. However, these buildings are part of a classified project which is closed to the public. The Town's interest in knowing specifically what the Government does at the Windsor site is not the type of public safety interest that the courts have protected.
 
 
 15
 The Town's reliance on Bristol Township as supporting enforcement of the Code is misplaced. There the Government's contractor was performing work in order to enable the sale of public housing units to private citizens. Thus, the township's interest in enforcing the building code was quite clear. Moreover, the court there stated that the government contract made it clear that the contractor was "to comply with local codes and that the burden was placed on him to secure permits." 146 F.Supp. at 865. Thus, the government's interest in preventing application of the local code was quite limited. As shown above, the facts of this case are quite the contrary; the Government's interest in preventing the disclosure of its plans and specifications and the inspection of its classified site is clear, while the Town's interest in securing this result is limited. Thus, we hold that the Town may not enforce the substance of the permit provisions against GE or Custom.
 
 
 16
 With respect to the fee provision, we can see no reason for treating it as separable from the other Code provisions. The Town concedes that the permit fee is just that, a fee and not a tax. The purpose of the fee, at least theoretically, is to defray the cost of enforcing the substance of the Code. See Town of Windsor, 496 F.Supp. at 586; Hotchkiss, 39 Conn. at 142. And, there is no indication in the Code that the fee provision is in any way independent of the other permit provisions. Cf. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 533, 58 S.Ct. 1009, 1016, 82 L.Ed. 1502 (1938). Thus, because we hold that the substance of the permit provisions may not be enforced against GE and Custom, it naturally follows that the fee may not be collected from them.
 
 
 17
 In sum, allowing the Town to enforce the permit provisions of the Code against GE and Custom would be essentially equivalent to allowing the Town to enforce the provisions directly against the Government. Given the classified nature of this project and its relation to our national defense, the Government's interest in preventing the application of the permit provisions against its contractors outweighs the Town's interest in forcing the contractors to secure a building permit. Therefore, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Town did argue below that Congress had waived DOE's immunity from local regulation through the Atomic Energy Act, 42 U.S.C. Sec. 2021(k). The district court rejected this argument on the ground that section 2021(k) does not pertain to the construction of nuclear research and development facilities. The Town does not raise the issue on appeal
 
 
 [2]
 Thus, reliance by the Town on United States v. New Mexico, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (holding that similar contracts between the Government and a private contractor pertaining to construction and repair work at a nuclear facility did not make contractors "instrumentalities" or "alter ego[s]" of the Government), is pointless
 
 
 [3]
 The Town's reliance on Sadrakula is misplaced for another reason as well; it misreads the case. The issue in that case was what state laws were adopted by the Government when the Government turned land into a federal enclave. 309 U.S. at 97-98, 60 S.Ct. at 432-33. Finding that continued application of the work safety rules would not interfere with the national purpose, the Court held that those provisions were adopted as federal law until Congress provided otherwise. Id. at 104-05, 60 S.Ct. at 436-37. The issue of state regulation of federal activity was not before the Court. Id. at 102 & n. 16, 60 S.Ct. at 435 & n. 16