**UNITED STATES POSTAL SERVICE**

v.

**TOWN OF GREENWICH, CONNECTICUT**

v.

**CENTRAL LAND COMPANY OF GREENWICH and Felix Equities, Inc.**

**Civ. No. 3:94 CV 1279 (JBA).**

United States District Court, D. Connecticut.

Sept. 5, 1995.

---

Alan M. Soloway, Assistant U.S. Attorney, Bridgeport, CT, Ruth A. Gottlieb, U.S. Postal Service, Ofc. of Field Legal Services, Windsor, CT, Margot E. de Ferranti, U.S. Dept.

of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Plaintiff.

John Meerbergen, Bleakley Platt & Schmidt, Greenwich, CT, Joyce H. Young, Town of Greenwich, Law Dept., Town Hall, Greenwich, CT, for Defendant.

Margaret A. Triolo, Whitman Bread Abbott & Morgan, Greenwich, CT, for Third–Party Defendant, Central Land Company of Greenwich.

Mark P. Santagata, Ronald E. Kowalski, II, Cacace Tusch & Santagata, Stamford, CT, for Third–Party Defendant, Felix Equities.

## RULING ON PLAINTIFF'S and DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT AND THIRD–PARTY DEFENDANTS' MOTIONS TO DISMISS

ARTERTON, District Judge.

### I. Factual and Procedural History

This case poses the question of whether the Town of Greenwich, Connecticut ("Town") may enforce state building code requirements and require payment of building permit fees relating to the construction of a new post office (the "West Putnam Station") in Greenwich against the United States Postal Service, the lessor of the property (Central Land Company of Greenwich) and/or the independent building contractor constructing the post office (Felix Equities, Inc.).

The essential facts of this controversy are not in dispute. On May 26, 1993, the United States Postal Service ("Postal Service") entered into a forty-year lease with five five-year renewal options with Third–Party Defendant Central Land Company of Greenwich ("Central Land") for the property at 500 Old Post Road in Greenwich. The lease gives the Postal Service the right to erect a new building. The lease explicitly states that the Postal Service is liable for any *applicable* license or permit fees and shall, at its expense, comply with all *applicable* federal, state, county, and municipal laws, orders, ordinances, and regulations. (Central Land Lease, §§ 3.01, 5.01, Town Exhibit 1). At the end of the term (or renewal term) of the lease, any improvements to the land become the property of Central Land. (Central Land Lease, § 6.01, Town Exhibit 1).

Apparently because it does not have title to the land upon which the West Putnam Station sits, Congress has not acted to assert exclusive jurisdiction over the site, *See* U.S. Const. Art. I, § 8, cl. 17 (Congress shall have Power ... "to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be ..."), nor has the State of Connecticut ceded exclusive jurisdiction over the land to the federal government. *See* C.G.S. § 48–1 (1993) ("Exclusive jurisdiction in and over land so acquired by the United States is ceded to the United States ..."). Under Connecticut law, the consent of the state is statutorily granted for the acquisition of land by the United States for post offices or any other government purposes and the property is "exempt from all state, county, and municipal taxation, assessment, or other charges." *Id.*

On September 28, 1993, the Postal Service awarded Felix Equities, Inc. the contract to construct the post office for a total amount of $4,347,000. The building plans call for a total floor area of 66,700 square feet including a lobby that can accommodate sixty-eight people. Included in the Postal Service's original contract with Felix Equities for the West Putnam Station, and referenced in the Postal Service's Architect–Engineer Project Requirements ("Project Requirements"), were the following clauses:

[G.11.a.] State and local building codes and regulations do not apply as a matter of law to work inside the property lines of Postal Service-owned properties but generally do apply to Postal Service-leased properties. In compliance with Postal Service policy, the contractor must comply with all State and local building code requirements unless otherwise specifically provided.

[G.11.b.] The contractor must pay all fees and charges for connections to outside services for use of property outside the site.

(West Putnam Station Solicitation, Town Exhibit 3).

When Felix Equities applied to the Town for a permit to access electrical facilities off-

site, the Town Engineer refused to issue the permit unless the Postal Service or Felix Equities secured a general building permit pursuant to Conn.Gen.Stat. § 29–263 or obtained a waiver from the Town. Under Connecticut law, "no building or structure may be constructed or altered until an application is filed with the local building official and a permit issued." Conn.Gen.Stat. § 29–263 (1993). Prior to the issuance of the permit, the local building official is required to review the building plans to determine compliance with the state building code. *Id.* With the exception of the State of Connecticut, the Town imposes a building permit fee of one percent of the estimated total cost of construction against any person or entity engaged in new construction or material alteration.[1] Conn.Agencies Regs. § 114.3.1 (1993) ("Each municipality shall establish a schedule of fees for each ... building permit."); Conn. Gen.Stat. § 29–252a(h) (1993) ("State agencies shall be exempt from the permit requirements of section 29–263 ...").

The Town and the Postal Service disagreed on whether a general building permit could be required. The Town maintained that Section G.11.a. of the Postal Service's contract with Felix Equities and the Project Requirements required the issuance of a building permit. The Postal Service, on the other hand, contended that it did not consider the project as "Postal Service-leased property," but rather a "Postal Service-owned improvement on leased land,"[2] which is not subject to building code regulations.[3]

The Town building official has reviewed and objected to certain aspects of the building plans, most notably, emergency lighting and sprinklers in "lookout galleries," where postal inspectors secretly monitor Postal employees, and the number of women's toilets. The Town has demanded that the design features be corrected, and that the building permit fee of $43,470 be paid before construction continued.

During the course of negotiations, the Postal Service deposited the disputed building permit fee with the Town in escrow pending the judicial resolution of the dispute and work continued on the project. The Postal Service also modified its contract with Felix Equities by eliminating Section G.11.a. and amended its lease with Central Land to state that the improvements on the land would be the property of the Postal Service during the term of the lease.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Postal Service filed this action against the Town seeking a declaration that the Postal Service is not subject to the state building code under the Postal Service Reorganization Act and the Supremacy Clause of the United States Constitution. In turn, the Town brought a third-party action against Central Land and Felix Equities seeking a declaration that the Town may enforce the state building code against

---

1. The Postal Service maintains the permit fee is an impermissible tax on the federal government. *See Massachusetts v. U.S.,* 435 U.S. 444, 464, 98 S.Ct. 1153, 1165, 55 L.Ed.2d 403 (1978) *citing Evansville–Vanderburgh Airport Authority Dist. v. Delta Airlines,* 405 U.S. 707, 716–720, 92 S.Ct. 1349, 1355–1357, 31 L.Ed.2d 620 (1972) ("taxes are valid so long as they (1) do not discriminate against interstate commerce, (2) are based upon some fair approximation of use, and (3) are not shown to be excessive in relation to the cost of the government of the benefits conferred."). Because the state government is exempt from municipal building permit fees, the Postal Service maintains that the Town's attempted enforcement of such fees against the federal government is discriminatory. Further, the Postal Service asserts that the fee schedule (1% of construction cost) does not fairly approximate the building inspector's services, and that in any event, the inspection is of no benefit to the Postal Service because it has its own inspection procedures.

Because the court's analysis of the Supremacy Clause is determinative, it is unnecessary to reach this claim.

2. "Postal Service-owned improvements on leased land" is defined as a project where the Postal Service leases land on which it designs, constructs, and owns the building and the site improvements. In contrast, at a "Postal Service-leased property," the Postal Services leases both the building and a site from a lessor. (Project Requirements, § 1.5.a., Town Exhibit 4).

3. The Postal Service's Architect–Engineer Project Requirements explicitly state that for Postal Service-owned improvements on leased land, Sections G.11–12 of the construction contract "must not be interpreted as requiring the obtaining of a building permit or the submitting of plans for approval by local building department." (Project Requirements, § 1.5.d., Town Exhibit 4).

**504**

Central Land and Felix Equities by requiring them to secure a building permit and certificate of occupancy, and to pay the necessary fees, as would normally be required of such building contractors and lessors of land to projects not involving the federal government. Conn.Gen.Stat. § 29–263 (1993).

Before the Court are the following motions: Central Land's Motion to Dismiss, Felix Equities' Motion to Dismiss, Postal Service's Motion for Summary Judgment, and the Town of Greenwich's Motion for Summary Judgment. The Court heard oral arguments on these motions on July 28, 1995. Pursuant to the Court's request, the parties filed post-hearing briefs on August 29, 1995.

For the reasons that follow, the Court concludes that the state building code does not apply to the Postal Service, its contractor, and/or its lessor for the construction of the West Putnam Station.

## II. DISCUSSION

### A. Introduction

Postal Service and the Town of Greenwich have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56 while Central Land and Felix Equities moves this Court to dismiss the complaint against them pursuant to Rule 12(b)(6). The parties have agreed on the essential facts underlying this case, and that this case can be decided as a matter of law. The Court concurs with the parties' assessment. Further, as required, the Court accepts the factual allegations in the Town's Third–Party Complaint as true in its consideration of the Third–Party Defendants' Motions to Dismiss. *Walsche v. First Investors Corp.,* 793 F.Supp. 395, 396 (D.Conn.1992) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

### B. Postal Service's Motion for Summary Judgment

The Court begins its analysis by turning to the applicability *vel non* of this state building code enforcement statutory scheme to post offices. The United States Constitution authorizes Congress to establish post offices. U.S. Const. art. I, § 8, cl. 7 (The Congress shall have Power ... "To establish Post Offices and post Roads."). Accordingly, Congress enacted the Postal Reorganization Act, which established the United States Postal Service as "an independent establishment of the executive branch of the Government of the United States," 39 U.S.C. § 201 (1993), to provide postal services. 39 U.S.C. § 403 (general duties of Postal Service). The Postal Service has the right to establish and maintain postal facilities so that patrons throughout the country will "have ready access to postal services." 39 U.S.C. § 403(b)(3) (1993). The Postal Service has the right to determine the need for post office and facilities, 39 U.S.C. § 404(a)(3), and may acquire and lease real property in this purpose. 39 U.S.C. § 401(5). The Postal Service also has the power "to construct, operate, lease, maintain buildings, facilities, equipment, and other improvements on any property owned or controlled by it." 39 U.S.C. § 401(6) (1993).

Because the owner and operator of the building at issue is the United States Postal Service, the Court begins its analysis by determining the applicability of federal law and the Supremacy Clause to this matter. The Supremacy Clause of the United States Constitution states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land ..." U.S. Const. art. VI, cl. 2. In enforcing the Supremacy Clause, the Supreme Court has consistently held that:

> the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation.

*Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 180, 108 S.Ct. 1704, 1709, 100 L.Ed.2d 158 (1988) (quoting *Environmental Protection Agency v. California ex rel. State Water Resources Control Bd.,* 426 U.S. 200, 211, 96 S.Ct. 2022, 2028, 48 L.Ed.2d 578 (1976)). *See U.S. v. Town of Windsor, Conn.,* 496 F.Supp. 581, 588 (D.Conn.1980) (*"Windsor I "*) ("[A]bsent express Congressional consent, where the legal incidence of state or local taxation or regulation falls on the Federal Govern-

ment or its instrumentalities, such is prohibited by the Supremacy Clause.") (citing *U.S. v. State Tax Commission of Mississippi*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976); *Mayo v. U.S.*, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943)).

 In order for federal governmental instrumentalities to be subject to state or local taxes or regulations, Congress must give such authorization in clear and unambiguous language. *M'Culloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819); *United States v. County of Allegheny*, 322 U.S. 174, 177, 64 S.Ct. 908, 911, 88 L.Ed. 1209 (1944) ("But unshaken, rarely questioned, ... is the principle that possessions, institutions, and activities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation."); *Hancock v. Train*, 426 U.S. at 179, 96 S.Ct. at 2012 (no clear declaration by Congress requiring federal installations to obtain state air pollution permits). The Town has offered no evidence that Congress has granted clear, unambiguous authorization for post offices to be subjected to building code regulations or permit fees. *See Middletown Township v. N/E Regional Office, U.S. Postal Service*, 601 F.Supp. 125, 127 (D.N.J.1985) ("Township of Middletown has not brought to the court's attention any evidence of congressional intent to subject federal instrumentalities such as the Postal Service to local zoning regulations.").

Courts have consistently held that the local municipalities cannot regulate the United States Postal Office regarding its opening of post offices. *See Id.* (zoning ordinances); *Stewart v. U.S. Postal Service*, 508 F.Supp. 112, 115 (N.D.Cal.1980) (zoning ordinances); *Crivello v. Board of Adjustment of Borough of Middlesex*, 183 F.Supp. 826 (D.N.J.1960) (zoning ordinances). Although the cases cited involved the imposition of zoning ordinances, the same legal basis applies to building code regulations and permit fees:

> [I]f the Postmaster General, pursuant to and in the exercise of the authority vested in him by congressional enactment, con-templates the erection of a post office on the proposed site, his authority may not be restricted by local ordinance.

*Crivello*, 183 F.Supp. at 829.

For these reasons, the Court grants the Postal Service's Motion for Summary Judgment and declares that the Town may not impose the state building code or the building permit fee schedule on the Postal Service in connection with the West Putnam Station.

## C. Central Land's and Felix Equities' Motions to Dismiss

### 1. Applicability of State Building Code Regulations

 In their respective Motions to Dismiss, Central Land and Felix Equities maintain that because they effectively stand in the shoes of the Postal Service, the state building code regulations and local building permit fees cannot be applied to them because any regulation of them necessarily interferes with the Postmaster General's authority to establish post offices, and thus, violates the Supremacy Clause. *See Breeze v. Town of Bethlehem*, 151 Misc.2d 230, 573 N.Y.S.2d 122 (N.Y.Sup.Ct.1991) (lessor of property to Postal Service not required to apply for building permit); *Durkin v. Board of Appeals of Falmouth*, 21 Mass.App.Ct. 450, 488 N.E.2d 6 (1986) (zoning ordinances not applicable to lessor of land to Postal Service); *Thanet Corp. v. Board of Adjust. of Township of Princeton*, 104 N.J.Super. 180, 249 A.2d 31, 34 (Law.Div.1969), *aff'd*, 260 A.2d 1 (N.J.Super.App.Div.1969), *cert. denied*, 55 N.J. 360, 262 A.2d 207 (1970) (lessor of land to Postal Service immune from local zoning ordinances).

The Town maintains that the principles of the Supremacy Clause do not automatically extend to Central Land and Felix Equities by virtue of their contracts with the federal government. *See Windsor I, supra; U.S. v. Town of Windsor, Conn.*, 765 F.2d 16 (2nd Cir.1985) (*"Windsor II "*).

In *Windsor I*, the Government entered into a joint venture with Combustion Engineering, Inc. to construct and operate a coal gasification research Process Developing Unit. The federal government funded two-

thirds of the project while Combustion Engineering funded one-third of the project and was responsible for the design, construction, and operation of the facility. Combustion Engineering owned the land on which the facility was built and leased it to the Government for $1.00 a year. *Windsor I*, 496 F.Supp. at 581.

The court held that while the Supremacy Clause barred the Town of Windsor, Connecticut, from imposing state building code requirements or from exacting a building permit fee from the federal government, Combustion Engineering was nonetheless subject to the regulations and fee. The *Windsor I* court adopted the language of a Third Circuit opinion:

> "[T]he Government has deliberately opted for the 'genius' of private enterprise ... In so choosing, the Government enjoys the benefits that are derived from private operation, but by the same measure, it must also suffer any reciprocal burdens. One of these burdens is the responsibility of (the private entity's) compliance with state ... regulations."

*Windsor I*, 496 F.Supp. at 592 (quoting *U.S. v. Pennsylvania Environmental Hearing Board*, 584 F.2d 1273, 1279 (3rd Cir.1978) (independent contract hired to operate a federal government ammunition plant was subject to state pollution laws)).

In *Windsor II*, the Town of Windsor sought to enforce building code provisions against the contractors hired by the federal Department of Energy to build and operate an expansion to an atomic power laboratory, already existing on federally-owned land. The Government conceded that the laboratory facility was not a federal enclave, and that the contractors were not alter egos of the government. *See U.S. v. New Mexico*, 455 U.S. 720, 739–740, 102 S.Ct. 1373, 1385, 71 L.Ed.2d 580 (1982) (private contractors hired to construct and manage a government-owned atomic laboratories were not "instrumentalities" of the United States).

The Second Circuit held that since the atomic laboratory was not a federal enclave and the contractors were not the alter egos of the government, "application of the Supremacy Clause requires a balancing of the state and local interest in enforcing their regulations against the Government's interest in opposing the regulation." *Windsor II*, 765 F.2d at 19 (citations omitted). In rejecting the Town's right to enforce the state regulations, the Second Circuit found that the federal government's interest in maintaining the confidentiality of its classified plans and not opening a classified site to town building inspections outweighed the town's interest in enforcing safety rules in an area not accessible to the general public. *Id.*

The Town of Greenwich urges the Court to apply the balancing test in *Windsor II* in that, similarly to *Windsor II*, the West Putnam Station is not a federal enclave, and Central Land and Felix Equities are not alter egos of the federal government. The third-party defendants assert, and the court agrees, that the holding of *Windsor II* is limited to the unique factual circumstances of that case and thus is not applicable here.

Since the *Windsor II* balancing test was formulated ten years ago, there have been no reported cases in this Circuit interpreting its applicability to other government-private entity contractual relationships. Both *Windsor* cases involved formal joint ventures between the federal government and independent contractors, in which the private companies constructed and solely operated the facilities. In the instant case, however, no ongoing operational partnership between the federal government and the third-party defendants exists because third-party defendants Central Land and Felix Equities will have no role in the operation of post office.

Because the Postal Service will be solely managing the West Putnam Station and has not delegated any operational authority, the government has not opted for the 'genius' of private enterprise within the meaning of the *Windsor I* court. *See Windsor I*, 496 F.Supp. at 592. It has merely contracted with private companies to lease the site and to construct a building instead of purchasing land and constructing the building itself. The lack of any ongoing operating arrangement with the private companies distinguishes this case from the *Windsor* cases, and for this reason, the Court will apply a

preemption analysis rather than the *Windsor II* balancing test here.

■ As a general rule, "where the legal incidence of a regulation falls on one other than the Government or its instrumentalities, such regulation is not of necessity barred by the Supremacy Clause." *Windsor I*, 496 F.Supp. at 591. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940) (safety requirements applicable to contractor constructing federal post office); *Penn Dairies v. Milk Control Commission of Pennsylvania*, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943) (military base not exempted from state milk price control laws). The Town argues that nothing in the Postal Reorganization Act and Postal Service regulations expresses a clear and manifest purpose to override state and local safety regulations, and that any government immunity should not be extended to contractors or lessors. *See Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (Federal Drug Administration regulations did not preempt local regulations governing blood donor centers); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (no preemption found under the United States Warehouse Act); *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48 (2d. Cir.1988) (local regulations regarding training and certification of asbestos workers not preempted by Occupational Safety and Health Act).

■ Although the Postal Reorganization Act does not expressly preempt state building code regulations, the building code is "preempted to the extent it actually conflicts with federal law." *Environmental Encapsulating Corp.*, 855 F.2d at 53. Unlike the three cases cited by the Town, the state law in this case conflicts with a federal scheme by infringing on the Postal Service's mandate to construct and operate post offices as authorized under the Postal Reorganization Act. *E.g.* 39 U.S.C. § 401(5) (acquiring and leasing of real property); 39 U.S.C. § 401(6) (constructing and operating buildings). Any regulation of the post office project, whether against the property, the lessor, or the building contractors "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Although the Town undoubtedly has a legitimate interest in ensuring the construction of safe buildings, the Town cannot directly or indirectly regulate post office buildings owned by the Postal Service, even if on leased land without specific authorization from Congress. *See Hancock v. Train*, 426 U.S. at 179, 96 S.Ct. at 2012; *Goodyear Atomic Corp. v. Miller, supra; EPA v. California ex rel State Water Resources Control Board, supra.* In the absence of such specific Congressional authorization, the Court finds that the state building code cannot be applied to the lessors of land to the Postal Service and to the contractors hired to construct postal facilities because it conflicts with federal law. *See Breeze v. Town of Bethlehem*, 151 Misc.2d 230, 573 N.Y.S.2d at 124; *Durkin v. Board of Appeals of Falmouth, supra; Thanet Corp. v. Board of Adjust. of Township of Princeton, supra. See also Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) (contractor for Air Force not subject to state licensing requirements); *U.S. v. Montana*, 699 F.Supp. 835 (D.Mont.1988) (government contractors constructing military installation not subject to state building code).

## 2. Applicability of Building Permit Fee

■ The final issue to be addressed is whether the Town may exact the permit fee against either Central Land or Felix Equities. The third-party defendants assert that assessing the fee against them is the same as imposing it against the federal government, and is violative of the Supremacy Clause because it directly burdens the United States.

■ "The mere fact that the imposition of a particular fee may ultimately burden the United States financially does not provide a sufficient basis to invalidate the tax as violative of the supremacy clause." *U.S. v. Montana*, 699 F.Supp. at 839. *See U.S. v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (state gross receipts tax

and compensating use tax valid against contractors constructing and managing government-owned atomic laboratory); *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937) (gross receipts tax on federal contractor valid even though it may increase the cost of service to government); *Alabama v. King & Boozer*, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941) (government contractor liable for sales tax on purchases made for work on government facility).

■ However, where the payment of a fee is required before the federal agency can carry out a government function, such a fee violates the Supremacy Clause. The Supreme Court stated in *Mayo v. U.S.*, 319 U.S. 441, 447, 63 S.Ct. 1137, 1140, 87 L.Ed. 1504 (1943):

> These inspection fees are laid directly upon the United States. They are money exactions the payment of which, if they are enforceable, would be required before executing a function of government. Such a requirement is prohibited by the Supremacy Clause.

The *Mayo* Court found that the state inspection fees are distinguishable from a tax upon the purchases of a government supplier, *Alabama v. King & Boozer*, *supra*, and price controls on a government contractor, *Penn Dairies v. Milk Control Commission*, *supra*:

> In these cases the exactions directly affected persons who were acting for themselves and not for the United States. These [inspection] fees are like a tax upon the right to carry on the business of the post office or upon the privilege of selling United States bonds through federal officials.

*Mayo v. U.S.*, 319 U.S. at 447, 63 S.Ct. at 1140.

In the instant case, although the state building code authorizes the Town to collect the fees against the lessor and contractor, the fee is being assessed against a building owned and operated by the United States. Because the Town required the building permit fees to be satisfied before work on the project could continue, the Town directly infringed on the federal government's "right to carry on the business of the post office." *Id.*

Because of this precondition, the Town may not exact the permit fee against the third-party defendants because it places "a direct burden upon the United States in the execution of its governmental functions in violation of the supremacy clause." *U.S. v. Montana*, 699 F.Supp. at 839 (building code fee assessed on federal property directly burdens the United States).

For these reasons, the Town cannot enforce the state building code and the building permit fees on the private contractors Central Land and Felix Equities and thus, the Court grants Central Land's and Felix Equities's Motions to Dismiss and denies the Town of Greenwich's Motion for Summary Judgment.

## III. CONCLUSION

The Court grants the United States Postal Service's Motion for Summary Judgment (# 19), Central Land's Motion to Dismiss (# 25), and Felix Equities's Motion to Dismiss (# 30), and denies the Town of Greenwich's Motion for Summary Judgment (# 32).

In accordance with these judgments, the Court orders the following relief:

1. Pursuant to 28 U.S.C. § 2201, the state building code does not apply to the Postal Service, its contractor, and/or its lessor for the construction of the West Putnam Station.

2. The Town of Greenwich, Connecticut is permanently enjoined from all current and future actions against the Postal Service, its contractors, subcontractors and/or its lessor for the Postal Service's failure to secure a general building permit.

3. The Town of Greenwich shall return the escrow deposit of $43,370 to the Postal Service within seven days of this Order.

SO ORDERED.