108 N.J. Super. 65 (1969)
260 A.2d 1
THANET CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF PRINCETON, AND W. JOSEPH SHINN, BUILDING INSPECTOR OF THE TOWNSHIP OF PRINCETON, DEFENDANTS, AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PRINCETON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1969.
Decided December 10, 1969.
Concurring Opinion December 22, 1969.
*66 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Henry A. Hill, Jr., argued the cause for appellant (Mr. Gordon D. Griffin, attorney).
Mr. Garrett M. Heher argued the cause for respondent (Messrs. Smith, Stratton, Wise & Heher, attorneys).
PER CURIAM.
This appeal, by the Township of Princeton, in a zoning case arises out of a long-term ground lease entered into between plaintiff, as owner of a five-acre tract of land situated in the Township, and the United States of America (Post Office Department). The lease recognizes that the Government intends to assign the lease to a "tenant" for the construction on the demised premises of a post office and incidental facilities according to the building and design requirements of the Government which will then lease back the premises.
The tract is located in an area zoned as "engineering and research" by the Township. Following the denial of plaintiff's application for municipal approval of the proposed post office facility (plaintiff sought alternatively a use variance, a special permit, or a variance for the proposed use under the lease), the instant suit was filed seeking a reversal of the denial of the application. By the second count of the complaint, plaintiff sought a declaration that the establishment of the general post office facility will, for the entire period of time it is used for that purpose, be immune from the Township Zoning and Land Subdivision Ordinances.
After issue was joined, the trial court granted plaintiff's motion for summary judgment on the second count of the complaint, the court holding that the United States Government *67 "whether as owner or lessee, is immune from zoning ordinances." The court's opinion is reported at 104 N.J. Super. 180.
On this appeal the Township concedes that if the United States Government owned the tract in question, its establishment of a post office facility would be immune from the Township Zoning Ordinance. However, the Township argues that the Government's mere lease of the tract, even for post office use, cannot confer immunity on it.
We do not agree and affirm the judgment herein substantially for the reasons expressed in the trial judge's opinion.
In view of the ruling, we find it unnecessary to consider whether or not plaintiff's application for a use variance or a special permit should have been granted.
Affirmed.
CARTON, J.A.D., (concurring in result).
In my view, the requested variance should have been granted. However, I question the correctness of the conclusion implicit in the judgment affirmed by the majority that a private owner may invoke governmental immunity from local zoning ordinances by leasing property to a superior governmental agency.
Plaintiff, as owner of a five-acre parcel on Harrison Street North in Princeton Township, had applied for both a hardship variance from the minimum width requirement and a use variance to permit the establishment of a United States post office facility in the Engineering Research District.
The voluminous proofs before the board of adjustment are fully summarized in nearly 100 pages of official minutes, taken at six separate hearings in 1967. However, the salient facts do not appear to be in substantial dispute.
The present post office consists of two facilities, a main building located in Palmer Square in Princeton Borough, and the Annex, near the railroad station some distance away in Princeton Township. The main building at Palmer Square houses some 48 employees, is inadequate and outmoded, *68 lacks adequate parking area, and cannot feasibly be enlarged. The Annex, originally designed for 43 employees, now houses over 100, and is leased from Princeton University which now desires the property for its own use. These two facilities, in the fiscal year 1967, handled some 81 1/2 million pieces of mail, an increase of 20 million over the previous year. The rate of growth of mail handled between 1961 and 1967 was 66%.
The site for the proposed new facility was selected after investigation of numerous possible sites made as a result of studies begun in 1959 as to postal needs of the Princeton area. It is bounded on one side by property of the American Can Company, which employs 50 employees, and on another by that of Opinion Research Corporation, which has 150 employees. In the vicinity are the premises of Gallop and Robinson, a concern which employs 65 full-time employees and 35 part-time employees.
At the time plaintiff's application came before the local board, the Engineering Research District permitted uses described in the title (later amended to add office uses). It also authorized related activities requiring "the feeding of employees and transient visitors, lodging of transient visitors and holding of conference assemblies." In this and most other districts property was permitted to be used for single-family residences, public parks and playgrounds, certain types of farming, and commercial greenhouses and nurseries of a minimum area of ten acres. By special permit, schools and educational institutions, churches, hospitals and nursing homes, cemeteries and public utilities were also permitted. Specifically prohibited were business, commercial or manufacturing uses involving the sale, shipment or production of merchandise and any use involving creation of noise after dark.
The new facility, projected to be used for a 20-year period, is designed to provide a structure containing all or most of the operations carried on in both existing offices, and to house all personnel under one roof. It is also *69 intended to provide adequate parking for both employees and patrons. The objective is to perform all post office functions with much greater efficiency and to provide the public in the entire area with improved mail service.
The planning board, prior to the zoning board hearings, had reviewed the application and made recommendations (to which plaintiff agreed) as to location of the building, additional parking and a change in traffic. That board adopted a resolution in May 1967 approving the proposed project. The zoning board denied the application.
The proofs before the board of adjustment established the need for the new facility, that the public interest would be served thereby, and that the use of the premises for the proposed purpose would be compatible with existing uses, as well as with other uses permitted in the district. My review of those proofs leads me to the conclusion that plaintiff fully satisfied the affirmative and negative requirements of the zoning statute for the granting of the requested variances.
Consequently, the right to erect a facility on its property for use by the United States Government as a post office need not, and should not, rest upon the shifting sands of sovereign immunity. That it need not rest upon such a dubious foundation appears from a review of the evidence on the merits.
It appears also from the nature of these proceedings. The Federal Government is not a party to this action. Nor has it invoked immunity from the local zoning requirements. Plaintiff, a private property owner, not the Federal Government, sought the variances. Upon its property either the Government or its sublessee will erect the substantial structures described in the application. As landlord it will receive from the Government, as tenant, a ground rent for a term of years for the use of the proposed site. As in the case of any other rental, plaintiff, as landlord holding the reversionary interest, will regain control of the leased premises at the expiration of the lease (or its earlier termination), including any buildings remaining thereon. Were *70 it not for a provision in the lease requiring the tenant to pay local taxes, the owner and landlord would be required to assume that burden. Further, the judgment runs in favor of the landlord, the private property owner, not the Federal Government.
No one challenges the right of the Federal Government to render itself immune from municipal zoning requirements by purchase or condemnation of the property. That issue is not involved.
The substantive issue which is involved, although somewhat obscured by the manner in which it has been raised, is whether a private owner may invoke immunity from local zoning restrictions by leasing its property to an entity which possesses sovereign immunity but has not, in fact, asserted it. In my judgment, the owner-lessor may not take on the mantle of sovereignty in this fashion. The implications of the majority's decision to the contrary thus harbor a far-reaching threat to the basic objectives of zoning without any corresponding benefit.
The decision is not confined to the simple question whether a facility on a five-acre parcel, landscaped and designed to harmonize with its environs, should be permitted to be used to fulfill a recognized public need for a post office. Far broader is the scope of the principle which inheres in it.
This determination implicitly permits the lessor, as well as the lessee, to erect any shape or size structure on any lot for any use, irrespective of the duration of the lease, and regardless of whether such use is compatible with other uses in the community  this without any corresponding obligation or commitment on the part of the lessor or the leasing agency as to the manner of such construction or use. The principle adopted necessarily applies to the lease of private property to any of a host of proliferating federal agencies and authorities. Even more important is the likelihood that it is readily susceptible of being applied with equal logic and force to a variety of state agencies and, indeed, to any agency or authority "which occupies a superior position *71 in the governmental hierarchy." Aviation Services, Inc. v. Board of Adjustment, Hanover Tp., 20 N.J. 275, 282 (1956).
There is no need from a practical standpoint to extend to the lessor who deals with a government agency the same broad immunity to local municipal regulations which that agency itself might exercise. See Carroll v. Board of Adjustment, Jersey City, 15 N.J. Super. 363 (App. Div. 1951); cf. Chicago v. L.J. Sheridan & Co., 18 Ill. App.2d 57, 151 N.E.2d 451 (Ct. App. 1958); 2 Anderson, American Law of Zoning § 9.07, at 120 (1968). Nor does Tim v. Long Branch, 135 N.J.L. 549 (E. & A. 1947), support such extension; there the Lanham Act, having been enacted pursuant to the war powers of Congress to remedy an emergency housing shortage, explicitly conferred immunity from local zoning regulations.
The Federal Government here  and for that matter, any agency higher than the municipality in the governmental hierarchy  can readily achieve its proper objectives within the framework of the planning and zoning laws. Significant on this score is the testimony before the local board of Arthur J. Parsons, National Real Estate Officer under the Postmaster General, to the effect that, although the Government has the power to avoid compliance with any zoning requirements by acquisition of title to the property, only three times in a thousand has this method been used. As he commented, the practice is to have the property developed pursuant to a purchase-lease arrangement under which every consideration is given to local zoning.
Of course, the Government may achieve these objectives by purchasing or condemning the property deemed necessary for the proposed use. In doing so, however, the agency invoking the right of sovereignty must also, by its commitment through ownership, assume responsibility for any erosion of the local zoning scheme and any blight which may result.
When the government agency, however, instead of invoking its sovereignty, elects to lease property from a private person, *72 it acquires a limited right in the property by virtue of and under the authority of the lease which gives it possession. In such case the owner or lessor seeking a use of property not authorized by the zoning regulations, whether the lessee is the Government or a private person, should be required, in the public interest, to obtain whatever variance is required. The property itself should remain subject to local restrictions just as it remains liable for local taxes. If warranted by the public interest, the variance can and should be granted.
In this manner the legitimate planning and zoning interests of the community can readily be accommodated to the objectives of the sovereign government. Both presumably are directed toward the same end of serving the public needs. There is no necessary conflict or friction, nor any reason for thwarting the local community in its efforts to maintain control over the orderly and planned development of the area within its borders. On the other hand, there is a grave danger that those efforts may be frustrated if the lease procedure is sanctioned as a means of escaping all control from legitimate local government requirements. The Post Office Department in this case has taken considerable pains to cooperate with the local government agencies in order that the new facility may have the least possible unfavorable impact upon the community. But local officials ought not be required to assume that all such agencies in the future will implement their plans in the same fashion if not required to do so.
Indeed, the broad principle enunciated by the majority cannot fail to encourage private lessors to invoke governmental immunity through leasing arrangement with state or federal agencies, thereby avoiding local planning considerations and disregarding community sensibilities. Moreover, once the lease has terminated the community is likely to be left with the shell of a structure which can, as experience has only too often demonstrated, serve as the cornerstone for a hardship variance application, the granting of which may perpetuate or even magnify the discordant use. The structure remains in any event, a monument to the absence of cooperation *73 between the community and the superseding governmental entity.
As the court stated in Howard v. Commissioners, 344 U.S. 624, 627 (1953),
* * * The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal areas within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The government rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. * * *