### UNITED STATES POSTAL SERVICE, Plaintiff,

v.

### CITY OF HOLLYWOOD, FLORIDA, Defendant.

No. 96–7345–CV.

United States District Court, S.D. Florida.

Aug. 7, 1997.

The City, while conceding that no permit could be required if the building was owned and renovated directly by the United States Postal Service ("Postal Service"), contends that where the Postal Service leases the building and where the contract for renovation is between the lessor and a private contractor, a building permit is required. The Postal Service contends that as an instrumentality of the United States it is immune from the permit requirements, regardless of whether the facility is owned or leased.

On November 22, 1996, the Postal Service filed a complaint requesting that a declaratory judgment be issued stating that the City is without legal authority to enforce its permitting procedures and building code against the Postal Service and that the defendant be enjoined from interfering with and/or halting construction and renovation work on the postal facility. The City filed a motion for summary judgment on January 8, 1997. The Postal Service filed a cross-motion for summary judgment on February 3, 1997. An order denying plaintiff's cross-motion for summary judgment and defendant's motion for summary judgment was entered on July 15, 1997. A bench trial was held on July 30, 1997.

### Issue

The issue before the Court is whether, when applied to a private landowner or contractor renovating a building leased as a postal facility, a City's building permit procedures intrude into or interfere with activities of the federal government conducted in pursuance of its constitutional power to operate the Postal Service.

Marcella Cohen, U.S. Attorney's Office, Miami, FL, for Plaintiff.

Daniel Assott, Hollywood, FL, for Defendant.

### MEMORANDUM OPINION

MIDDLEBROOKS, District Judge.

#### Introduction

This case presents the question of whether the City of Hollywood ("the City") may require a building permit for renovation of an existing building for use as a postal facility.

### Facts

Prior to trial the parties filed a joint stipulation of facts wherein the parties agreed to the following set of facts, which are adopted as findings of fact.

On or about April 20, 1995, the Postal Service issued a Solicitation for Proposals for Existing Space ("Solicitation for Proposals"). In November or December 1995, the Postal Service entered into a lease with B.H. Ventures, Inc. ("B.H. Ventures"), the owner of

an existing building at 4429–4433 Hollywood Boulevard, Hollywood, Florida ("the subject premises"). Included in the lease was a Construction Rider and an Addendum to Lease. The subject premises is a portion of 4415–4437 Hollywood Boulevard.

In accordance with the Construction Rider, the Postal Service arranged with the architectural firm of Architects International to prepare drawings and specifications for the renovation work. An architect with the firm, licensed by the State of Florida, prepared the plans and specifications for the renovation work in compliance with the South Florida Building Code.

The Postal Service received the architect's work and provided these drawings and specifications to B.H. Ventures on or about March 29, 1996.

On or about July 26, 1996, B.H. Ventures and Colonna Construction Co., Inc. ("Colonna Construction") entered into a written agreement for the renovation work. B.H. Ventures and Colonna Construction are privately owned, non-governmental companies. In addition to performing work on Postal Service projects, Colonna Construction also does work for other clients, including prior work for the City.

In August, 1996, Colonna Construction began the renovation work at the subject premises. On August 20, 1996, while the renovation work was being performed, the City issued a Notice of Violation and Stop Work Order ("Stop Work Order"). The Stop Work Order was handed to Terry Shank, the project manager for Colonna Construction. On or about June 19, 1997, the City sent a Courtesy Notice to B.H. Ventures. No other notices or stop work orders have been issued by the City for the subject property.

To date, no building permit has been sought for the project at the subject premises and the City has not rescinded the Stop Work Order. The work at the subject premises has stopped, and has not been completed.

B.H. Ventures provided a complete copy of the plans and specifications to the City's Chief Building Inspector, William McHatton.

Mr. McHatton did not review them because there was no building permit for the project.

Based upon testimony at trial,[1] the Court makes the following additional findings: Mr. Waymon J. Goddard, an Architect/Engineer with the United States Postal Service and supervisor at the United States Postal Service with regard to the subject premises, presented B.H. Ventures with a list of three building contractors that the Postal Service had used in the South Florida area for B.H. Venture's consideration. (Tr. 54.) B.H. Venture's choice was subject to the Postal Service's approval. (Tr. 39.) B.H. Venture chose Colonna Construction from the list provided by Mr. Goddard. (Tr. 21, 22.) The Postal Service had control over the design, construction work and inspection of the project. (Tr. 50.) The Postal Service told B.H. Ventures that no building permit was required for the project.

The Postal Service takes several steps to ensure that their facilities are safe on a national and local level. (Tr. 52–76.) The Postal Service inspects and reviews the construction with licensed architects and engineers of the local area where the facilities are located. (Tr. 55–56.) The Postal Service also has a group of health and safety officers that are involved in the inspection of the facilities. (Tr. 56.)

As part of its construction process, the Postal Service issues detailed specifications, (Ex. 1B), which describe everything that is to be built in the building. (Tr. 58–59.) The specification book describes the materials to be used, how they are to be applied, and provides the technical specifications of the materials. (Tr. 59.) The Postal Service also utilizes architectural drawings, (Ex. 1A), which depict how construction is to take place and describe pictorially the items that have to be constructed at the facility. (Tr. 62.) The specifications and drawings for the Hollywood facility are in conformance with national codes as well as the South Florida Building Code. (Tr. 56, 60.) The architects in charge of designing the facility are registered and licensed in Florida. (Tr. 53.)

---

1. The stipulated facts are contained in a Joint Stipulation of Facts and Disputed Facts served July 28, 1997. References to the transcript of the trial and to exhibits at trial are as follows: · (Tr., Ex.).

The specifications and plans for the Hollywood facility were made available to the City and according to Mr. Goddard, the Postal Service welcomed any suggestions the City might have. (Tr. 26, 63–64.) The City, however, declined to review the plans since no permit had been requested. As counsel for the City explained in argument, without any assurance that the City's views would be accepted, the building department was unwilling to participate in a review of the plans. The City's position is that under its permit process it must have the final decisions concerning construction of the facility. (Tr. 126.)

According to the testimony of Mr. Goddard, the person responsible for overseeing construction and design of postal facilities in the southeast region, the Postal Service has begun as a new retailing concept, the use of "postal stores." (Tr. 51–52.) The Southeast Region has been particularly active in building postal stores. (Tr. 52.) Postal stores are designed in a standardized way with a similar layout and the Postal Service tries to fit that standard plan as closely as possible into the confines of the space available. (Tr. 65.)

### Discussion

■ The law in this area traces to *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), where the Supreme Court, in an opinion authored by Chief Justice Marshall, held that the supremacy clause of the United States Constitution prevented Maryland from levying a stamp tax on a branch of the Bank of the United States, a corporation chartered by Congress. The Chief Justice concluded that the states could not tax or control a federal instrumentality. 17 U.S. at 428–31. Operation of a federal instrumentality necessarily affects the interests of all since it is for the benefit of all; the national power must therefore remain unfettered if control and representation are to be coincident: "In the legislature of the Union alone, all are represented. The legislature of the Union alone, therefore, can be trusted by the people with the power of controlling measures which concern all in the confidence it will not be abused." 17 U.S. at 435–36. *M'Culloch* announced the rule that has been followed ever since: If Congress does not authorize regulation of federal instrumentali-

ties, the possibility of interference with substantive federal policy is sufficient to raise a presumption of immunity. *See, Osborn v. Bank of U.S.,* 22 U.S. (9 Wheat.) 738, 865, 6 L.Ed. 204 (1824) (rejecting Ohio's argument that the presumption when Congress is silent should be against immunity).

The leading case on the application of the supremacy clause to the exercise of postal power is *Johnson v. State of Maryland,* 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920) which held that a postal employee could not be required by state law to obtain a driver's license to drive a mail truck. In an opinion written by Justice Holmes, the Court stated:

> It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer, upon examination, that they are competent for a necessary part of them, and pay a fee for permission to go on. Such a requirement does not merely touch the government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders, and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work, and that duty it must be presumed has been performed.

254 U.S. at 57, 41 S.Ct. at 17. *See also, Leslie Miller, Inc. v. State of Ark.,* 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) ("subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder.")

■ The United States Constitution authorizes Congress to establish post offices. U.S. Const. art. I, § 8, cl. 7 (The Congress shall have Power ... "To establish Post Offices and Post Roads.") Accordingly, Congress enacted the Postal Reorganization Act, which established the United States Postal Service as "an independent establishment of the executive branch of the Government of the United States," 39 U.S.C. § 201, to provide postal services. 39 U.S.C. § 403 (gener-

al duties of Postal Service). The Postal Service has the right to establish and maintain postal facilities so that patrons throughout the country will "have ready access to postal services." 39 U.S.C. § 403(b)(3). The Postal Service has the right to determine the need for post offices and facilities, 39 U.S.C. § 404(a)(3), and may acquire and lease real property in this purpose. 39 U.S.C. § 401(5). The Postal Service also has the power "to construct, operate, lease, maintain buildings, facilities, property owned or controlled by it." 39 U.S.C. § 401(6).

The City's process directly intrudes upon the Postal Service's ability to construct the postal project at issue here. As was the case in *Johnson v. State of Maryland, supra,* and *Miller v. State of Arkansas, supra,* the permit process does not merely affect the construction process remotely by a general rule of conduct, but rather it extends to a requirement that construction be stopped until the City's requirements are satisfied. The City claims the right to insist upon specifications in addition to those the federal government, through the Postal Service, has pronounced sufficient.

The public safety concern articulated by the City is, of course, substantial. However, there is no showing that the federal government is not equally committed to public safety. In fact, the City acknowledged the substantial testimony presented by the Postal Service that the federal government would build a safe facility. (Tr. 129.)

Moreover, the City concedes that it does not claim any power to require a permit if the postal store was owned by the Postal Service. The City argues that in this case a permit is required because the postal store is leased.[2] The public safety concern, however, does not hinge on whether the postal store is owned or leased. Acceptance of the City's position would mean that in the case of leased facilities, the Postal Service's ability to obtain uniformity and efficiency in construc-

tion would be impeded. Such a dichotomy does not appear contemplated by the Congressional authorization to both own and lease facilities.

In addition to *Johnson v. Maryland, supra,* the Postal Service relies upon a series of cases where courts have relied upon the supremacy clause to preempt local laws conflicting with the postal laws. *See, U.S. v. City of Pittsburg, Cal.,* 661 F.2d 783 (9th Cir.1981); *U.S. Postal Service v. Town of Greenwich, Conn.,* 901 F.Supp. 500 (D.Conn., 1995); *Middletown Tp. v. N/E Regional Office, U.S. Postal Service,* 601 F.Supp. 125 (D.N.J., 1985); *Crivello v. Board of Adjustment of Borough of Middlesex,* 183 F.Supp. 826 (D.N.J.1960); *City of North Miami, Fla. v. Grant–Sholk Construction Co.,* 237 F.Supp. 573 (S.D.Fla., 1965); *Breeze v. Town of Bethlehem,* 151 Misc.2d 230, 573 N.Y.S.2d 122 (N.Y.Sup., 1991); *Thanet Corp. v. Board of Adjustment of Princeton Tp.,* 108 N.J.Super. 65, 260 A.2d 1 (N.J.Super.A.D., 1969). Two of these cases are very close factually to this case.

In *U.S. Postal Service v. Town of Greenwich, Conn., supra,* the Postal Service entered into a lease for property upon which it intended to build a postal facility. The Postal Service entered into a contract with a builder to construct the facility. The Town sought to require the Postal Service, the landowner, or the contractor, to obtain a building permit. The district court concluded that the building code enforcement procedures did not apply to the Postal Service, the lessor, or the contractor:

> Although the Town undoubtedly has a legitimate interest in ensuring the construction of safe buildings, the Town cannot directly or indirectly regulate post office buildings owned by the Postal Service, even if on leased land without specific authorization from Congress. In the absence of such specific Congressional authorization, the Court finds that the state building code cannot be applied to the lessors of

**2.** The City makes three arguments with respect to its claim to be able to require permits for leased facilities. First, the City argues that its safety interest is greater because of the temporary nature of federal occupancy; in this case, the lease is for ten years with allowance for two additional five year extensions. Second, the City points out that this postal store will share occu-

pancy in a "strip" shopping center with other tenants with a common roof, walls and other parts. Finally, the City argues that its public safety concerns extend to facilities owned by the Postal Service but it recognizes that regulation of owned facilities is precluded by law. (Tr. 37–38; 119–20.)

land to the Postal Service and the contractors hired to construct postal facilities because it conflicts with federal law.

901 F.Supp. at 507 (Citations omitted).

In *Breeze v. Town of Bethlehem, supra,* the Postal Service solicited bids for real estate for a new branch post office. Pursuant to plans provided by the Postal Service, the plaintiff submitted a proposal for construction on land owned by the plaintiff. The bid was accepted and the Postal Service entered into an Agreement to Lease. The plaintiff applied for a building permit and the Town denied the permit on the ground that the proposed project was not a "permitted use" under the existing zoning for the site. The plaintiff argued that the project was not subject to state and local zoning and land use regulation on supremacy grounds. The Town contended that as a private landowner the plaintiff was not subject to federal immunity. The court held that the project was not subject to local zoning laws without regard to whether it was owned or leased:

> The Postal Reorganization Act in direct and unmistakable terms gives the Postal Service the discretion to either purchase or lease real property in furtherance of its mission of providing postal services to our nation. To impose the impediment of state and local zoning and land use regulation upon the Postal Service's discretion, in cases where the Postal Service has determined that a lease arrangement would be most appropriate, would result in a direct and unauthorized intrusion upon the United States Government's power to select the location and manner of site acquisition for necessary postal facilities.

573 N.Y.S.2d at 124.

In the face of this authority, the City makes two primary arguments. First, the City argues it is merely requiring a private contractor that is doing work on privately owned property to obtain a building permit and abide by the building code. The City contends that the legal incidence of its regulation falls upon the contractor, not the Federal Government or its instrumentalities, and thus enforcement of the requirements is not prohibited by the supremacy clause. However, this argument is not tenable in light of *Johnson v. State of Maryland, supra* (postal employee) or *Miller v. Arkansas, supra* (contractor) where in both cases the entity actually subject to a local regulation was not the government itself but its employee or contractor. *See also, Gartrell Const. Inc. v. Aubry,* 940 F.2d 437 (9th Cir.1991).[3]

Secondly, the City argues that in the event there is a conflict between federal and local regulations, application of the supremacy clause requires a balancing of the local interests against the federal interests. The City derives its balancing test from *DeKalb County, Ga. v. Henry C. Beck Co.,* 382 F.2d 992 (5th Cir.1967) and *U.S. v. Town of Windsor, Conn.,* 765 F.2d 16 (2d Cir.1985); *Public Housing Administration v. Bristol Tp.,* Bucks County, Pa., 146 F.Supp. 859 (E.D.Pa. 1956).

The City is correct that both *DeKalb* and *Town of Windsor* speak of "balancing" the state and local interest in enforcing their regulations against the federal government's interest in opposing the regulation. *See DeKalb County, Ga. v. Henry C. Beck Co., supra* at 996; *U.S. v. Town of Windsor, Conn., supra,* at 19. However, it is not at all apparent that "balancing" as used in these decisions authorizes a court to compare or weigh the relative strength of the governmental interests involved.[4]

---

**3.** The City attempts to bolster its argument with a line of cases involving state and local taxation of government contractors. *See, United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) and *United States v. Tax Commission of Mississippi,* 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975). These cases establish that a federal contractor cannot escape payment of non-discriminatory gross receipts or sales taxes where state law makes the contractor but not the United States liable for payment of the tax. This "legal incidence" rule has been formulated in the tax area but has not been used

where a state by regulation interferes with federal instrumentalities or agents.

**4.** In *DeKalb,* the Fifth Circuit held that the record on summary judgment did not provide sufficient information concerning local action and policy and federal policy "that could serve as a basis for decision on a delicate federal-state matter." 382 F.2d at 997. The court reversed summary judgment in favor of a contractor that the county could not assess and collect a building permit fee. The county asserted that it had not done or proposed to do anything other than

■ The test as delineated by the Supreme Court requires an assessment of whether a state or local government regulation intrudes or interferes with activities of the federal government. If it does, the regulation is barred by the supremacy clause regardless of the weight or importance of the local regulation. Examination of the regulation is limited to determining whether the impact on the government's activity is incidental or intrusive.[5] *See, Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

To impose the impediment of state and local building regulations would result in a direct and unauthorized intrusion upon the Postal Service's ability to select the location, design and manner of site acquisition for necessary postal facilities. Consequently, the court finds that plaintiff's project to construct a postal facility on privately owned land, for use as a postal facility, pursuant to a lease agreement with B.H. Ventures, is immune from the City's building permit regulations.

Based on the foregoing, it is

ORDERED AND ADJUDGED that the local building code does not apply to the Postal Service, the lessor, and/or the building contractor for the construction of the subject premises; the City of Hollywood, Florida is permanently enjoined from all current and future actions against the Postal Service, its contractors, subcontractors, and/or its lessor for the Postal Service's failure to secure a general building permit; and is granted judgment declaring that plaintiff's construction of a leased facility that will be used exclusively by the United States Postal Service is immune from and not subject to the City of Hollywood and local building permit requirements so long as the facility is used for federal postal purposes. It is further

ORDERED AND ADJUDGED that the plaintiff, United States Postal Service, shall submit a proposed Final Judgment within ten (10) days of the date of this order.

collect the fee and the court pointed out that the record did not reflect the extent, if at all, the county used, or attempted to use, the permit requirement for assertion of authority over federal construction. In *United States v. Town of Windsor, Conn., supra,* the Second Circuit held that the supremacy clause precluded the town from enforcing permit and fee provisions against a contractor hired by General Electric to expand a nuclear facility it managed for the federal government. The City relies upon language in the opinion where the court states: "[t]hese buildings are not like a V.A. hospital or public housing project which members of the public would be expected to use. If they were, the town's interest in protecting the public by enforcing public safe-ty rules would at least be understandable." 765 F.2d at 19. In neither case is the discussion of balancing necessary to the holding.

5. The City has not pointed to any standards that could guide the Court in attempting to balance the relative interests of the federal or local government. In the absence of such standards, such an approach would appear difficult. If a balancing of interests were to be used in this case, however, since the public safety concerns are shared by both levels of government, the interest of the Postal Service in a uniform system for construction and design of its facilities would be paramount.