MARIE L. FABIANO *vs.* BOSTON REDEVELOPMENT AUTHORITY
& another.[1]

No. 98-P-786.

Suffolk. November 8, 1999. - March 30, 2000.

Present: BROWN, LENK, & BECK, JJ.

*Practice, Civil,* Motion to dismiss, Intervention. *Constitutional Law,* Supremacy of Federal law, Zoning. *Zoning,* Timeliness of appeal.

In a civil action, the plaintiff's challenge, pursuant to St. 1960, c. 652, § 13, to a decision of the Boston Redevelopment Authority should not have been dismissed under Mass.R.Civ.P. 12(b)(6), where the issues of law and fact raised, involving the Federal supremacy of the Postal Service that immunizes it from local zoning regulation, were not resolvable from the face of the plaintiff's pleadings. [71-74]

Where claims were timely brought in Superior Court under St. 1960, c. 652, § 13, within thirty days of a vote of the Boston Redevelopment Authority, the judge erred in dismissing them as untimely. [74-75]

A Superior Court judge did not abuse his discretion in permitting a party to intervene in a civil action pursuant to Mass.R.Civ.P. 24(b), and the application to intervene was not untimely, in the circumstances, or prejudicial to the rights of the original parties. [75-76]

CIVIL ACTION commenced in the Superior Court Department on June 18, 1996.

A motion to intervene was heard by *Thayer Fremont-Smith,* J., and a motion to dismiss was heard by *Vieri Volterra,* J.

*Marie L. Fabiano,* pro se.

*Charles P. Kindregan* for the intervener.

LENK, J. The plaintiff Marie L. Fabiano raises two issues on appeal. First, she claims error in the allowance of defendant Franklin Square Apartments' (FSA) motion to dismiss, Mass.R. Civ.P. 12(b)(6), 365 Mass. 754 (1974), her complaint. As to this, she contends that the claims asserted concerning zoning violations are neither preempted by Federal supremacy, art. VI,

---

[1]Franklin Square Apartments, Inc., intervener.

cl. 2, of the United States Constitution, nor time-barred. Second, she asserts error in allowing FSA to intervene belatedly as a defendant. We conclude that while there was no abuse of discretion in permitting FSA to intervene, it was error to dismiss Fabiano's complaint.

*Facts and procedural history.* We review the allegations set forth in Fabiano's complaint mindful that, "[i]n testing the correctness of a judgment dismissing a complaint for failure to state a claim on which relief can be granted, we accept as true all of the allegations of the complaint and all reasonable inferences which may be drawn from the complaint and which are favorable to the party whose claims have been dismissed." *Spinner* v. *Nutt,* 417 Mass. 549, 550 (1994), quoting from *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. 387, 388 (1975).

Fabiano's complaint states that she resides at 1 Worthington Street in Roxbury, Massachusetts. She is an abutter to 1575 Tremont Street (1575 Tremont), which is a lot owned by the Boston Redevelopment Authority (BRA).[2]

Upon this lot stands an apartment building owned by FSA, the intervener in this action. This building, formerly known as Back Bay Towers, is a chapter 121A project (project).[3] Fabiano maintains that the building's original site plan, approved in 1964 by the inspectional services department of Boston, included entrance and exit ramps from the building to an adjacent street and only four surface parking spaces in front of the building.

Fabiano alleges that the neighborhood surrounding and including 1575 Tremont is governed by a BRA land assembly and redevelopment plan (plan). According to Fabiano, in 1960, the BRA amended the plan so that the neighborhood buildings included in the plan could be used only for residential purposes and not for retail or wholesale trade. In addition, the plan requires that "any basic or fundamental modification" must be

---

[2]"The BRA is an urban renewal agency and a redevelopment authority that supervises the adoption and administration of urban renewal plans in Boston. The BRA also serves as the planning board for Boston." *St. Botolph Citizens Comm., Inc.* v. *Boston Redev. Authy.,* 429 Mass. 1, 3 (1999).

[3]General Laws c. 121A, §§ 1 et seq., "was enacted in response to a legislative determination that the continued existence of blight and decay posed a threat to the health and safety of the inhabitants of the Commonwealth. The Legislature concluded that such conditions constituted a public exigency and that their elimination would be in the public interest." *Boston Edison Co.* v. *Boston Redev. Authy.,* 374 Mass. 37, 45 (1977).

approved by the Boston city council. The plan also included the regulation of parking space and green space.

In 1996, FSA applied to the BRA for an amendment to the occupancy uses listed in its building's 121A project plan in order to allow FSA to lease space in the building for a post office. In addition, FSA requested that the BRA grant a number of deviations from the Boston Zoning Code that would also be necessary for the FSA to lease space to be used as a post office. Fabiano opposed the post office relocation on several bases: that a retail establishment at 1575 Tremont would violate both the 121A project plan and the redevelopment plan; that there existed significant noise, traffic, air quality, and safety issues associated with the proposed post office use; and that such a facility would cause her property's value to decrease. She made her position known at a May 15, 1996, BRA meeting. However, at that meeting, the BRA voted to amend FSA's 121A project plan to include the post office as an approved use and granted the requested zoning deviations as well. According to Fabiano's complaint, some of these deviations were zoning violations that had existed for some years.

Following this vote, on June 18, 1996, Fabiano brought an action in the nature of certiorari against the BRA pursuant to St. 1960, c. 652, § 13. She alleged that she was an "aggrieved person" under this statute and that she and her property would be harmed by the BRA's allowance of a postal facility at 1575 Tremont due to the issues noted above. Her complaint alleges that the BRA's vote of May 15, 1996 (the BRA vote) was invalid for the following reasons: the post office is a retail establishment which is a forbidden use at 1575 Tremont under the applicable zoning laws; the post office use is contrary to the residential intent of the 121A project plan; the post office is a fundamental modification of the redevelopment plan that requires approval by the Boston city council; and that certain zoning deviations granted by the BRA vote legitimized already existing zoning violations, including the closing of several of 1575 Tremont's garage entrance and exit ramps to an adjacent street, changing the traffic patterns around the site, allowing additional parking spaces, and reducing the open and green space in the neighborhood.[4] Fabiano requested that the court declare the BRA vote to be invalid and that the post office be prohibited

---

[4]Fabiano's complaint is unclear as to whether all of the additional zoning deviations alleged by Fabiano were requested by FSA in connection with the

from leasing space in 1575 Tremont.[5] Further, she requested that the BRA be ordered to correct the zoning violations itemized above.

On March 6, 1997, the BRA moved for summary judgment, arguing that its approval of the post office project was proper. The motion judge denied the BRA's motion on May 1, 1997. Shortly thereafter, on June 20, 1997, FSA moved to intervene pursuant to Mass.R.Civ.P. 24(a) and (b), 365 Mass. 769 (1974). Fabiano opposed the motion, but a different judge granted it without opinion on July 11, 1997.[6]

On August 5, 1997, FSA filed a motion pursuant to Mass.R. Civ.P. 12(b)(6) to dismiss Fabiano's complaint for failure to state a claim on which relief could be granted. FSA contended that the Federal supremacy of the Postal Service preempted Fabiano's claims of zoning violations, that Fabiano lacked standing to challenge the BRA vote, and that her claims of alleged zoning violations were untimely. Fabiano responded by arguing that the Postal Service had expressed a willingness to comply with local zoning laws and submitted the Postal Service's solicitation proposals in support of her contention.[7]

On February 2, 1998, a third judge granted FSA's motion to dismiss, holding that Fabiano failed to state a claim on which relief could be granted. He reasoned that Fabiano's challenge of the BRA vote was preempted by Federal supremacy since the Postal Service, as a Federal agency, and by extension FSA as its lessor, could not be subjected to local zoning regulations without authorization from Congress. Therefore, the validity of the BRA vote was irrelevant and no relief could be granted to Fabiano. In addition, the judge held that, although Fabiano had standing to challenge the BRA's vote, any claims of zoning violations independent of the post office project were time-barred, as Fabi-

approval of the post office relocation or if they were considered by FSA to be a separate request.

[5]At oral argument, the parties stated that the Postal Service is currently leasing space and conducting business at 1575 Tremont Street.

[6]FSA's initial motion to intervene was denied on July 2, 1997, for failure to comply with Superior Court Rule 9A. FSA subsequently renewed its motion to intervene on July 8, 1997.

[7]The judge, however, in his opinion expressly stated that because the motion at issue was a 12(b)(6) motion to dismiss on the pleadings, he did not take into consideration the Postal Service proposals submitted by Fabiano.

ano claimed that the violations had been occurring for years. This appeal followed.[8]

1. *FSA's rule 12(b)(6) motion to dismiss.* In evaluating the allowance of FSA's motion to dismiss, the standard is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim." *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 321 (1998), rev'd on other grounds, 428 Mass. 684 (1999), quoting from *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). "[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any

---

[8]As a threshold matter, we address FSA's cross appeal of the motion judge's ruling that Fabiano had standing to bring her claims. FSA argues that Fabiano is attempting to bring an impermissible private cause of action for the direct enforcement of zoning violations. However, the case relied on by FSA, *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481 (1979), and which concerns G. L. c. 40A, also known as the Zoning Act, has no application here. Fabiano does not seek direct enforcement of the zoning laws but instead challenges a BRA vote which altered the uses permitted by the plan.

The motion judge correctly held that Fabiano had standing to challenge the BRA vote pursuant to St. 1960, c. 652, § 13. That statute is the applicable procedural vehicle for persons aggrieved by a BRA vote, as here. Section 13 states that "any person, whether previously a party to the proceeding or not, who is aggrieved by such vote [by the BRA] . . . may file a petition in the supreme judicial or superior court sitting in Suffolk County for a writ of certiorari against the [BRA] to correct errors of law therein." See *Shriners' Hosp. for Crippled Children* v. *Boston Redev. Authy.*, 4 Mass. App. Ct. 551, 555 (1976); *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 44-45 (1977). Fabiano alleges in her complaint that she is aggrieved by numerous aspects of the BRA's vote and filed her petition for certiorari in Suffolk Superior Court. Further, "it is settled that the term 'person aggrieved' is to be given a comprehensive meaning." *Shriners' Hosp.*, 4 Mass. App. Ct. at 555, quoting from *Dodge* v. *Prudential Ins. Co.*, 343 Mass. 375, 381 (1961) (construing § 13). The grant of standing contained in § 13 "is sufficiently broad to allow for review by a person who alleges a substantial injury as a direct result of the BRA's action." *Boston Edison Co.*, 374 Mass. at 46. Fabiano has alleged substantial injury. Her property abuts the FSA lot and her allegations of noise, traffic, safety and loss of property value support her claim that she has been harmed by the BRA vote. See *Shriners' Hosp.*, 4 Mass. App. Ct. at 555 (plaintiff hospital was aggrieved party since hospital property abutted proposed development site; variances from city zoning code granted to developers were subjects of proper concern for plaintiff as erroneous action regarding zoning would cause direct injury to property interest of plaintiff). Although Fabiano may indirectly be seeking the enforcement of the zoning laws applicable to her neighborhood through a challenge to the BRA vote, she is perfectly correct in doing so pursuant to § 13 of St. 1960, c. 652.

form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Brum, supra* at 321, quoting from *Nader, supra* at 104. Therefore, "[a]ll that a plaintiff need do to resist such a motion is present a complaint that does no more than 'sketch[] the bare silhouette of a cause of action.' " *Brum, supra* at 322, quoting from *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 9 Mass. App. Ct. 369, 371 (1980). With these principles in mind, we turn to the motion judge's rulings in regard to FSA's motion to dismiss.

(a) *Federal supremacy.* The motion judge held that the Postal Service, and, by extension, FSA as its lessor, was immune from local zoning regulations due to its Federal supremacy. He concluded that, in order to subject the Postal Service to local regulations, the authorization must come from Congress. Therefore, the judge held that Fabiano's claims that the BRA vote was invalid were irrelevant since the Postal Service could locate a facility without concern for local zoning such as the BRA redevelopment plan here, whether validly amended to permit the use or not.

It is true that "[c]ourts have consistently held that the local municipalities cannot regulate the United States Postal Office regarding its opening of post offices." *United States Postal Serv.* v. *Greenwich*, 901 F. Supp. 500, 505 (D. Conn. 1995). In the absence of clear and unambiguous authorization by Congress for such regulation, "the activities of federal installations are shielded by the Supremacy Clause from direct state regulation." *Id.* at 504, quoting from *Goodyear Atomic Corp.* v. *Miller*, 486 U.S. 174, 180 (1988). See *Middletown* v. *N/E Regional Office, United States Postal Serv.*, 601 F. Supp. 125, 127 (D.N.J. 1985) (town offered no evidence that Congress had granted clear, unambiguous authorization for post offices to be subject to building code regulations). The preemption of such regulations includes zoning ordinances and related regulations. See *Stewart* v. *United States Postal Serv.*, 508 F. Supp. 112, 115 (N.D. Cal. 1980) (Postal Service not required to comply with local zoning ordinances); *Greenwich, supra* at 505 (town could not impose State building code or building permit fee schedule on construction of new post office); *United States Postal Serv.* v. *Hollywood*, 974 F. Supp. 1459, 1465 (S.D. Fla. 1997) (city's building permit requirement preempted in regard to post office); *Thanet Corp.* v. *Board of Adjustment of Princeton*, 104 N.J.

Super. 180, 186, aff'd, 108 N.J. Super. 65 (1969) (zoning ordinances preempted); *Breeze* v. *Bethlehem,* 573 N.Y.S.2d 122, 124 (N.Y. Sup. Ct. 1991) (post office not subject to State or local zoning and land use regulations).[9]

Courts considering the issue have also generally concluded that the Postal Service's immunity would extend to the Postal Service's lessor, here FSA. See *Hollywood,* 974 F. Supp. at 1465 (plaintiff's project to construct building on privately owned land for use as post office pursuant to lease with Postal Service was immune from Hollywood's building permit regulations); *Thanet Corp.,* 104 N.J. Super. at 186 (builder-lessor immune from state and local zoning and land use regulations); *Breeze,* 573 N.Y.S.2d at 124 (same). Compare *Montgomery* v. *Sherburne,* 147 Vt. 191, 192-195 (1986) (plaintiff developer seeking site plan approval for construction of building to be used as post office not immune from land use regulation; lease not yet signed by Postal Service and Postal Service informed plaintiff that he would have to comply with local zoning ordinances before Postal Service would go forward with lease).

Notwithstanding this, however, we conclude that Fabiano's complaint is sufficient to overcome FSA's Federal immunity defense for the purposes of a 12(b)(6) motion.[10] FSA's immunity defense raises issues of law and fact that cannot be determined from the face of Fabiano's pleadings, let alone in FSA's favor, and dismissal pursuant to rule 12(b)(6) was accordingly error.

The cases upon which the motion judge relied and which FSA calls to our attention share this common feature: their focus is upon situations where the Postal Service or its lessors in fact sought to preempt local zoning laws. See *Stewart,* 508 F.

---

[9]Case law in the Commonwealth has not squarely addressed the issue of the Postal Service's supremacy, and, for purposes of this decision, we need not reach it now. In *Durkin* v. *Board of Appeals of Falmouth,* 21 Mass. App. Ct. 450, 452 (1986), we stated in reference to the use of a locus leased to the post office that "[a] use of the locus under the lease for a proper Federal purpose may have been immune from *application* of the town bylaw" (emphasis original), citing *Thanet Corp.,* 108 N.J. Super. 65, 66-67 (1969).

[10]The motion judge stated that he did not take into consideration the Postal Service's solicitation proposals submitted by Fabiano, and thus neither do we. "The plaintiff's claim must be based on facts set forth in the complaint; all materials outside the pleadings are excluded from this review." *General Motors Acceptance Corp.* v. *Abington Casualty Ins. Co.,* 413 Mass. 583, 584 (1992).

Supp. at 113; *Middletown*, 601 F. Supp. at 126; *Hollywood*, 974 F. Supp. at 1460; *Thanet Corp.*, 104 N.J. Super. at 182; *Breeze*, 573 N.Y.S.2d at 123. As *Middletown* points out, "the relevant authorities establish that the Postal Service is *not bound* to observe the land use regulations of [the town]." 601 F. Supp. at 128 (emphasis added). There is no suggestion in the cases, however, that the Postal Service is somehow precluded from *choosing* to comply with local regulations. In *Montgomery*, the Postal Service conditioned its signing of a lease on the lessor's compliance with local zoning ordinances, thereby pursuing "a policy of intergovernmental cooperation." 514 A.2d at 704 (1986). Furthermore, the Federal statutes pertinent to the powers of the Postal Service appear to give the Service quite expansive authority when establishing post offices.[11] It would seem then that there could well be instances where the Postal Service might voluntarily not pursue a post office location which would violate local zoning laws. Otherwise put, the Postal Service might not in all instances assert its supremacy and would thereby not claim the immunity from local zoning laws to which it would otherwise be entitled.

This distinction between mandatory and voluntary compliance with local regulations is of significance. FSA's assertion that Fabiano's claim is preempted by the Postal Service's Federal supremacy is predicated upon the assumption that the Postal Service itself wishes to claim supremacy. This is a fact to be established and not one that may be assumed. FSA may only assert supremacy if the Postal Service wishes to do so. Moreover, Fabiano alleges in her complaint that FSA petitioned the BRA for a project amendment and zoning deviations in order to lease space for a post office. This suggests that the Postal Service sought voluntary compliance with local zoning and did not assert a supremacy claim. It would not have been necessary for the Postal Service to have required FSA to pursue either an amendment to FSA's 121A project or BRA approval were it asserting supremacy. Fabiano's complaint on its face states a claim and should not have been dismissed. The more

---

[11]For example, the Postal Service has the power to "construct, operate, lease, and maintain buildings, facilities, equipment, and other improvements on any property owned and controlled by it." 39 U.S.C. § 401(6) (1994). The Postal Service also has the power to "determine the need for post offices . . . and to provide such offices, facilities, and equipment as it determines are needed." 39 U.S.C. § 404(a)(3) (1994).

appropriate procedural vehicle in such circumstances, in which the Postal Service's position on the matter could be ascertained, is Mass.R.Civ.P. 56, 365 Mass. 824 (1974), and not rule 12(b)(6). See *Kirkland Constr. Co.* v. *James,* 39 Mass. App. Ct. 559, 564 (1995) (Brown, J., concurring).

Currently, the Postal Service is apparently in compliance with the regulations as altered by the BRA vote of May 15, 1996. Were the BRA vote to be declared invalid, however, the Postal Service would have at least several alternatives: it could relocate the post office; it could assert its immunity as to the use aspect of the BRA vote but agree to resolve the other violations of the plan (such as opening the entrance and exit ramps); or it could, of course, assert its immunity as to all of the alleged violations. Because Fabiano has stated a claim for which relief can be granted, we reverse the motion judge's dismissal of her claims.

(b) *Timeliness of zoning violation claims.*We next address Fabiano's contention that the motion judge erred in granting FSA's rule 12(b)(6) motion as to the rest of her zoning violation claims. These claims were construed by the motion judge as being unrelated to the post office relocation, as are those referring to the closing of 1575 Tremont's garage entrance and exit ramps to the street, the traffic pattern changes, the additional parking spaces, and the reduction of the open and green space in the neighborhood. The motion judge held and FSA argues that since Fabiano's complaint alleges that the above violations had been occurring for years before the BRA vote, she was therefore time-barred from bringing her claims pursuant to § 13 of St. 1960, c. 652, and therefore dismissal of her claims was appropriate.

The motion judge appears to have misconstrued Fabiano's claims. Section 13 states that an aggrieved person must file her petition within thirty days after the BRA secretary files a copy of a final BRA *vote* with the Boston city clerk. St. 1960, c. 652, § 13. Fabiano does not simply allege in her complaint that zoning violations are presently occurring and have occurred at 1575 Tremont. Instead, her petition challenges the BRA *vote* that legitimized those alleged violations and she did so within the thirty-day time limit. Fabiano's claims are not untimely, and therefore the motion judge erred in dismissing them.

The motion judge treated Fabiano's claims as independent of the BRA's approval of the post office relocation. Alternatively, FSA maintains that if Fabiano is claiming that the zoning viola-

tions were approved by the BRA vote in connection with the post office relocation, then those claims are preempted by the Postal Service's supremacy. For the reasons discussed above, we cannot say at this procedural juncture that her claims are preempted by Federal supremacy.

2. *FSA's motion to intervene.* We finally turn to Fabiano's contention that it was error for the judge to have allowed FSA's motion to intervene. Rules 24(a) and (b) of the Massachusetts Rules of Civil Procedure respectively govern intervention as of right and permissive intervention. Because the motion judge was silent as to the basis on which he permitted intervention, we may consider whether either would support intervention.

We are persuaded that the judge did not abuse his discretion in permitting FSA to intervene pursuant to rule 24(b). Rule 24(b)(2) states, in relevant part, that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Mass.R.Civ.P. 24(b)(2). A judge has broad discretion in deciding whether or not to grant permissive intervention. See *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. 782, 785 (1994). "Determination of a motion to intervene will not be reversed absent an abuse of that discretion." *Peabody Fedn. of Teachers, Local 1289* v. *School Comm. of Peabody*, 28 Mass. App. Ct. 410, 413 (1990).

Fabiano contends on appeal that FSA's application was untimely, having been brought approximately one year after she filed her complaint. This alone does not suffice to show an abuse of discretion. FSA filed its motion only about a year after Fabiano's case was filed, and Fabiano does not claim that FSA was asked by the BRA to join the litigation earlier but refused. Nor has a final judgment been rendered in this case. See *Corcoran* v. *Wigglesworth Mach. Co.*, 389 Mass. 1002, 1003 (1983) (permissive intervention denied as motion filed three years after action began); *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 538-539 (1986) (permissive intervention denied to parties who earlier rejected invitation to join litigation and who sought to intervene after decision rendered).

In addition, before FSA moved to intervene, the BRA was vigorously defending the validity of its vote, the main issue in

Fabiano's complaint, and had filed a summary judgment motion that might have disposed of Fabiano's claims without necessitating FSA's intervention. See *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 133 (1986). FSA moved to intervene only forty-five days after summary judgment was denied to the BRA.

Furthermore, as required by rule 24(b), FSA's defenses of standing, Federal preemption, and untimeliness of claims all shared common questions of law or fact with Fabiano's suit against the BRA. The legal issue at the heart of Fabiano's case is whether the BRA vote was valid, and any of FSA's defenses could potentially have disposed of Fabiano's claims. Nor will FSA's intervention unduly delay or prejudice the adjudication of the rights of the original parties. Again, any of FSA's defenses could dispose of Fabiano's claims against the original defendant BRA entirely. Alternatively, a resolution of this issue involving FSA, a party with a direct interest in this suit, would benefit rather than prejudice Fabiano, since the post office facility is already established and conducting business at 1575 Tremont. See *Cruz*, 417 Mass. at 786 (permissive intervention did not prejudice party opposing motion). For all of the above reasons, we will not disturb the judge's decision permitting FSA to intervene.

Because Fabiano has stated claims for which relief could be granted, we reverse the judgment dismissing her claims and accordingly remand them to the Superior Court for further proceedings consistent with this opinion.[12] The order allowing the motion to intervene is affirmed.

*So ordered.*

---

[12]Because of this ruling, we need not address Fabiano's request on appeal for leave to amend her complaint to include the allegation that the Postal Service wished to comply with local zoning regulations.