Fahey, J.
These consolidated cases are actions in the nature of certiorari, under St. 1960, c. 652, §13. See G.L.c. 249, §4. The plaintiffs challenge the approvals and vote of the Boston Redevelopment Authority under G.L.c. 121A with respect to a project to be located in the Leather District of Boston (the “Project”). The matter is now before the court on the defendants’ motions to dismiss for lack of subject matter jurisdiction under Mass.R.Civ.P. 12(b)(1).[4] A hearing was held before the undersigned on January 8, 2001 and on the renewed motions to dismiss the amended complaints on February 9, 2001. For the reasons discussed below, the motions are DENIED.

BACKGROUND

The following facts are taken from the second amended complaints in 00-2334 and 00-2314.[5]
The defendants in these actions are the Boston Redevelopment Authority (the “BRA”), the urban renewal agency for Boston having authority to approve applications under G.L.c. 121A; Rose Associates, Inc. (“Rose”), a real estate developer; and Sandwell, LLC, owner of the Project area.
Rose seeks to develop property located at 201 Essex Street, which is at the corner of South and Essex Streets in Boston (the “Property”). This Property is currently used as a commercial surface parking lot for 83 vehicles. In connection with its proposal to erect a retail and office building on the Property, Rose asked the BRA to find that the Property is a “blighted open area,” a term defined in G.L.c. 121A, §1. The application also seeks an exemption from City of Boston taxes' and a request that the Project be allowed to deviate from certain zoning requirements.
On April 26, 2000, the BRA approved a structure that differed in some important respects from the structure originally proposed. The BRA found that the Property was a “blighted open area” and conducted a “Large Project Review.”
*684 There are 13 plaintiffs in these actions. Ten plaintiffs[6] reside at 86 South St., a residential building located across South St. from the Property. One plaintiff, G. Glenn Wiebe, resides at 107 South St., approximately 100 feet from the Property and, according to the map attached as Ex. 2 to the complaint in Civil No. 00-2334, is across the street from 86 South St. One plaintiff, Thompson, resides in Cambridge and owns property at 210 Lincoln Street. Finally, one plaintiff, Peggy Davis-Mullen, is a member of the Boston City Council and a resident of Boston.
The plaintiffs allege that they will suffer harm, including the following, as a result of the Project.
The plaintiffs who reside at 86 South St. (the “South St. plaintiffs") allege that the Project would result in a building that is 91 percent larger and 66 percent taller than permitted by as-of-right zoning, which would cause additional traffic congestion from vehicles bringing goods, services and people to the building and would create an immediate and lasting adverse impact on the quality of their lives, their enjoyment of their properties, and their properties’ values. The Project would result in the construction of a five-level, 250-car parking garage which is not permitted under as-of-right zoning, which would cause increased carbon monoxide emissions, deep excavation threatening ground movements for which there is no adequate mitigation plan, additional traffic congestion, and irritant noise from the garage’s exiting siren. Additional shadows would be cast on their residences and on Gateway Park and their community and they would lose a skyplane view from their residences. The Project would result in increased noise, vibrations, pollution, and litter during its construction. The Project would also result in increased noise, pollution, and litter caused by the large amount of automobile and pedestrian traffic to the Project. The Project would detract from, and damage the coherence and historic character of, the Leather District, resulting in an immediate and lasting adverse impact on their quality of life. The tax exemption granted harms them by being an illegal use of public funds, reducing funds available for public services, and increasing their tax burden.
Plaintiffs Christensen, Powers, Langworthy, and both Winklemans allege the Project would lead directly to diminished ambient daylight in their residences. Christensen and Powers also allege that, because they participated in the development of Article 44, their right to security in their contributions as citizens in a participatory democracy has been abrogated.
Plaintiff Thompson, who resides at 107 South St., alleges many of the same harms as do the 86 South St. plaintiffs.
Plaintiff Davis-Mullen alleges she has standing because of her duties and responsibilities as a municipal officer, which relate to municipal matters directly impacted by the grant of c. 121A benefits to the Project. Davis-Mullen also alleges, in part, that she has standing to “act as a check against the powers of the executive branch; protecting her residential, commercial and institutional constituents from legally unwarranted actions by the executive branch which effect [sic] tax receipts, the provision of city services, important and unique City [sic] assets and the quality of life for city residents is in keeping with this responsibility.”

DISCUSSION

The sole issue now before the court is whether the plaintiffs have standing to challenge the BRA’s decision. The parties agree that the relevant statute is St. 1960, c. 652, §13 (“c. 652”). Chapter 652, §13 states in relevant part;
[A]ny person, whether previously a party to the proceeding or not, who is aggrieved by such vote [by the BRA], or any municipal officer or board, mayfile a petition in the supreme judicial or superior court sitting in Suffolk County for a writ of certiorari against the [BRA] to correct errors of law therein; and the provisions of [G.L.c. 249, §4] shall apply to said petition except as herein provided with respect to the time for the filing thereof. The remedy provided by this paragraph shall be exclusive.
The issue thus turns on whether the plaintiffs are “persons . ... aggrieved” or whether any of the plaintiffs is a “municipal officer” within the meaning of the statute.
Under c. 652, §13, the “words ‘persons aggrieved’ are to be given a comprehensive meaning.” Boston Edison Co. v. Boston Redev. Auth., 374 Mass. 37, 44 (1977), quoting Dodge v. Prudential Ins. Co. of America, 343 Mass. 375, 381 (1961). That statute thus “allow[s] for review by a person who alleges a substantial injury as a direct result of the BRA’s action.”[7] Id. at 46.
In this case, the defendants argue that the plaintiffs sire not entitled to the presumption of standing given to abutters under G.L.c. 40A, §17. This issue need not be decided, because I conclude that the plaintiffs have demonstrated standing under other established principles.
Among the harm that the 86 South St. plaintiffs allege, they claim they will suffer from increased noise, vibrations, pollution, and litter during construction. They claim that they will suffer from increased noise, vehicular and pedestrian traffic, pollution, and litter after construction is complete. They say they will suffer from shadows being cast on their residences as well as lack of daylight, and they would lose a skyplane. I conclude that this harm is sufficient to demonstrate standing at this stage because it is similar to, or greater than, harm alleged or proven in other cases.
In Boston Edison, the Supreme Judicial Court concluded that Boston Edison alleged a sufficiently sub *685 stantial injury that would be a direct result of the BRA’s decision. In that case, the BRA approved a project which, among other things, allowed the operation and maintenance of an energy plant that would provide electricity, steam, and other services to certain medical institutions and a publicly assisted housing project. Boston Edison, 374 Mass. at 40. Boston Edison opposed the project, because construction of the energy plant would cause Boston Edison to lose for at least 35 years business that yielded about $3 million in gross revenues. Id. at 41. While the SJC considered the issue a close one, it concluded that “[t]he loss which Edison will undoubtedly suffer as a result of the BRA’s approval of the project is direct, substantial, and ascertainable” and thus Boston Edison was a “person aggrieved.” Id. at 44, 46. The SJC also noted, however, that “in many, if not most, circumstances, the injury complained of may be too remote to make the party seeking review a ‘person aggrieved.’ ” Id. at 46.
The harm the 86 South St. plaintiffs allege is similar to harm alleged in other cases where standing has been upheld. See Fabiano v. Boston Redev. Auth., 49 Mass.App.Ct. 66, 70 n.8 (2000) (allegations of noise, traffic, safety, and loss of property value sufficient); Shriners’ Hosp. for Children v. Boston Redev. Auth., 4 Mass.App.Ct. 551, 555 (1976) (shadows would fall upon hospital, environmental impact likely directly to affect hospital, direct injury to hospital’s property interests). While it is true that in these cases the plaintiffs were abutters and the 86 South St. plaintiffs reside across the street from the Property and thus are not strictly abutters, this difference is not dispositive. General Laws c. 40A, §11 defines “parties in interest” as including not only abutters, but also owners of land directly opposite on any public or private street or way and abutters to abutters. While such persons perhaps do not enjoy a presumption of standing under c. 652, such a status is still a factor and c. 40A, §11 establishes that abutters to abutters and some owners are viewed on the same level as abutters. Thus, that the 86 South St. plaintiffs are not, strictly speaking, “abutters” does not convince me that their status differs in any material way from the plaintiffs in Fabiano and Shriners’ Hospital.
In short, I conclude that the 86 South St. plaintiffs have standing because they have alleged harm that is sufficiently like that in Boston Edison, Fabiano, and Shriners’ Hospital to show that they have alleged a “substantial injury” will occur to them as a direct result of the BRA’s decision.[8]
Because I find that the 86 South St. plaintiffs have sufficiently demonstrated standing, I need not decide whether any of the other plaintiffs have done the same. Cf. Cohen v. Zoning Bd. of Appeals of Plymouth, 35 Mass.App.Ct. 619, 620-21 (1993) (in context of appeal of decision of zoning board, where there is a multiparty appeal it is only necessary to determine whether any one plaintiff is aggrieved in order to decide standing issue); Murray v. Board of Appeals of Barnstable, 22 Mass.App.Ct. 473, 476 n.7 (1986). I articulate no opinion as to whether the other alleged harm establishes standing.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motions to dismiss for lack of subject matter jurisdiction be DENIED. It is further ORDERED that, after hearing and agreement of the parties on February 9, 2001, the plaintiffs’ motions for judgment on the pleadings will be filed by March 16, 2001; the defendants’ oppositions will be filed by April 9, 2001 and any reply will be filed by April 23, 2001; the hearing on the motions will be on April 30, 2001 at 9:00 AM.

 The plaintiffs advance no argument that a motion under Rule 12(b)(1) is an inappropriate vehicle to challenge standing. Rule 12(b)(1) does not require that I consider material outside the pleadings. Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 555 (1999); Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106, 109 (1995). Hook only at the pleadings in deciding this motion.

 I allow the plaintiffs’ motion for leave to amend the complaint in 00-2334.

 These are: Christensen, Powers, Langworthy, Ring, Julia and James Winkleman, Samataro, Patricia and Bruce Edwards, and Fjeseth.

 The defendants argue that this court is limited to the record before the BRA to determine whether the plaintiffs have standing. The defendants are not correct. While it is true that c. 652 states that persons aggrieved may file for a writ of certiorari (now a civil action in the nature of certiorari) under G.L.c. 249, §4, it also states that a person may be aggrieved “whether previously a party to the proceeding or not.” If a person not previously a party to the proceedings before the BRA may file a petition, it follows that the standing issue must be decided regardless of what is in the BRA record.

 The defendants also argue in their brief that the harm the plaintiffs claim they will suffer is not materially different from the harm they would suffer if the Project proceeds in compliance with the current zoning requirements. In a related context, the SJC has held that the magnitude of the threat of harm to a potential plaintiff in relation to the threat of harm from a use permissible as of right is a factor that may be considered but is not dispositive of the standing issue. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421. Mass. 719, 724 (1996). I have considered this relative threat of harm as a factor in my determination that the 86 South St. plaintiffs have alleged sufficient facts to establish standing. See Fabiano, 49 Mass.App.Ct. at 70 n.8.

 G. Glenn Wiebe.